**In re GRAND JURY INVESTIGATION.**

**G.J. No. 82–366–02–03.**

United States District Court,
E.D. Pennsylvania.

Feb. 14, 1983.

Elizabeth K. Ainslie, Asst. U.S. Atty., Philadelphia, Pa., for respondent.

Anne M. Dixon, Philadelphia, Pa., for movant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

As a part of its investigation into mail fraud arising out of fictitious automobile

accident claims, a grand jury has ordered an attorney to appear to testify and to produce "any and all fact sheets generated between 1977 and the present with respect to any and all cases involving personal injury arising from automobile accidents." The Government has filed two affidavits pursuant to *In re Schofield,* 507 F.2d 963 (3d Cir.1975) averring that the material sought is relevant and necessary to an investigation within the grand jury's jurisdiction and not sought for any other purpose, and averring that the material cannot be obtained from any other source. The Government has also averred that "[o]ne of the factual issues being investigated is whether or not attorneys representing personal injury claimants have participated in any such fraud."

The attorney has moved to quash the subpoena, contending that the fact sheets are protected by the attorney-client and work-product privileges, and that the subpoena is overbroad and burdensome.[1] The attorney has averred by affidavit that the fact sheets sought are generally prepared by a paralegal at the time of the client's initial visit "in the presence of and with the assistance of the attorney." The focus of the attorney's discussion with the client at this visit is on "how the accident happened." Movant's attorney has stated to the Court that about 1600 of these fact sheets are prepared each year.

The Court has reviewed the submissions of the parties, including the affidavits of the Government and the movant, and has reviewed *in camera* thirty-six fact sheets, an apparently representative sample of those sought. For the reasons set forth below, the motion to quash the subpoena will be denied, with the understanding that photocopies of seven of the fact sheets submitted for *in camera* inspection will be produced with the information claimed as confidential redacted prior to their production.

■■■ The attorney-client and work product privileges are both applicable to grand jury proceedings. *In re Grand Jury Proceedings (Sun Co.),* 599 F.2d 1224, 1228, 1233 (3d Cir.1979).[2] The Third Circuit has noted, however, that as these privileges obstruct the search for truth and provide benefits that are "at best, indirect and speculative" they must be "strictly confined within the narrowest possible limits consistent with the logic of [their] principles." 599 F.2d at 1235; *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 802–03 (3d Cir. 1979). The right of the public to "every man's evidence" is "particularly applicable to grand jury proceedings." *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). Those constitutional, common law, or statutory privileges which constitute the exceptions to that right must not, therefore, be applied in a manner which will impede the search for truth in circumstances where the policies underlying these privileges would not be served. Accordingly, movant has been required to set forth with particularity his bases for asserting the attorney-client and work product privileges, and the Court has reviewed the documents provided for *in camera* inspection in order to determine the proper bounds to which the claims of privilege should extend in these proceedings.

---

1. The burdensomeness objection has for present purposes been mooted by the parties' agreement that the subpoena be limited to require at the present time only fact sheets prepared in 1981 and 1982. To date, also by agreement of the parties, 36 fact sheets have been presented to the Court for *in camera* inspection. Both sides have agreed that fact sheet #4 does not involve a motor vehicle accident and is not relevant to the investigation; hence, it need not be produced.

2. A so-called "crime-fraud exception" exists to both privileges where the attorney-client relationship was begun or continued to further continuing or future crime or fraud, or where the legal work was performed in furtherance of crime, fraud, or other misconduct inconsistent with the basic premises of the adversary system. *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 802 (3d Cir.1979); *In re Sealed Case,* 676 F.2d 793, 812–16 (D.C.Cir. 1982). Though the Government has averred that the grand jury is investigating possible participation by attorneys in fraudulent activities, it has not been contended that the crime-fraud exception applies in these proceedings to defeat the assertion of the privileges. *Cf. Appeal of Hughes,* 633 F.2d 282, 290–91 (3d Cir. 1980) (opinion of Gibbons, J.)

■ The attorney-client privilege protects communications from client to attorney made and reasonably believed necessary for the purpose of obtaining legal advice or assistance and intended to be confidential. *United States v. American Telephone and Telegraph,* 86 F.R.D. 603, 612 (D.D.C.1979); *See In re Grand Jury Investigation (Sun Co.),* 599 F.2d at 1233–35.

> An important element of the lawyer-client privilege is a showing that the communication was meant to be kept secret. When a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege.... Even if the privilege exists it is waived when the client voluntarily reveals the information to another or his attorney does so with his consent.

*United States v. Bump,* 605 F.2d 548, 551 (10th Cir.1979). *See United States v. Tellier,* 255 F.2d 441, 447 (2d Cir.1958) ("The moment confidence ceases, privilege ceases." *quoting Parkhurst v. Lowten,* 2 Swanst. 194 (1819)). The burden of proving the confidentiality of the communication rests on the party asserting the privilege. *Bump,* 605 F.2d at 551; *Mead Data Central, Inc. v. United States Department of the Air Force,* 184 U.S.App.D.C. 350, 362, 566 F.2d 242, 254 (1977). Communications made with no expectation of confidentiality are thus not protected by the privilege. *United States v. Alvarez,* 519 F.2d 1036, 1047 (3d Cir.1975); *See In re Grand Jury Investigation (Tinari),* 631 F.2d 17, 19 (3d Cir.1980).

■ Prior to the Court's review of the thirty-six sheets submitted *in camera,* our inspection of the form itself, devoid of answers, indicated that these forms when completed could be expected to include very little information of a confidential nature. The sheet asks for information such as the client's name, address, phone number, social security number, insurance company and policy number, and employment status, and also asks for the time, location and a description of the accident. This information will, in almost all circumstances, have been either disclosed to third parties, a matter of public record, or intended by the client to be disclosed by the attorney in filing claims, instituting litigation, or investigating the accident. At the *in camera* hearing on the motion to quash, counsel for the movant made a "showing" with respect to the claim of attorney-client privilege, pointing out those statements on the fact sheets which contained confidential information. Such information was contained on documents numbers 5, 12, 17, 18, 20, 25, and 29. The information consisted in all cases of only a few words, and in no case did it appear that disclosure of the information would aid the grand jury's investigation. The Court has agreed in each instance that the material considered confidential should be redacted by submitting photocopies made by covering the confidential information.

Movant also asserts a broader privilege with respect to the fact sheets, contending that as documents prepared in anticipation of litigation they are non-discoverable work product. The work product privilege is intended to insure that attorneys can perform their duties with a certain degree of privacy, assembling information, sifting facts and preparing legal theories and strategy without undue and needless interference by opposing parties and their counsel. Such protection aids the thorough preparation and presentation of each side of a lawsuit. *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); *United States v. Nobles,* 422 U.S. 225, 237–38, 95 S.Ct. 2160, 2169–70, 45 L.Ed.2d 141 (1975). The privilege also comports with basic ideas of fairness by preventing a party, without a proper showing, from obtaining the benefits of his adversary's trial preparation efforts. The privilege is not, however, absolute. *Id.*

■ Movant faces several barriers in his attempt to claim the protection of the work product privilege for the fact sheets sought in the subpoena. These fact sheets were prepared in anticipation of personal injury litigation, not in anticipation of the instant grand jury proceedings. Had they been prepared in anticipation of the instant proceedings, or were they now being sought by an adversary in the personal injury liti-

gation for which they were prepared, they would clearly be work product. There has been profound disagreement, however, as to whether the work product privilege applies to documents prepared for a case other than the one in which protection is sought. The divergent positions are well laid out in an opinion of the Court of Appeals for the District of Columbia Circuit in the case of *Grolier Inc. v. Federal Trade Commission,* 671 F.2d 553 (1982). Some courts have held that documents prepared for one case are freely discoverable in another case, while, at the other extreme, courts have held that there is a "perpetual protection for work product extending beyond the termination of the litigation for which the documents were prepared and reaching all subsequent suits." 671 F.2d at 555. An intermediate approach that looks to the relationship between the first and second actions has been advanced by several leading commentators and a "substantial body of case law;" and was ultimately adopted in *Grolier. Id.; See* 4 J. Moore, Moore's Federal Practice ¶ 26.-64[2] at 26–415 (2d ed. 1979); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 at 200–02 (1970); *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136, 153 (D.Del. 1977). In *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 803 (1979), the Third Circuit utilized an intermediate approach, concluding that work product prepared in one action was protected in a subsequent grand jury proceeding where both actions were proceeding at the same time and both involved the identical subject matter. We believe that such an intermediate approach is the best one, as it allows us to take account of the important policies underlying the work product privilege without needlessly hindering the right of a grand jury to obtain evidence. Assessing the claim of work product privilege in the present case in light of the temporal relationship and the similarity in subject matter between the current grand jury investigation and the personal injury litigation for which the fact sheets sought were prepared, we are led to the conclusion that the privilege should not be extended to prevent disclosure in this case.

First, we note that many of the fact sheets sought concern cases which have already terminated. Even with respect to pending cases, however, the secrecy with which grand jury investigations are conducted insures that the information will not be disclosed to any adversary in personal injury litigation. There is thus no danger that any work product in these documents will be used against the clients for whom it was prepared in personal injury litigation.

In addition, this Court can perceive no relationship between any work product contained in these fact sheets and the legal issues involved in the grand jury investigation. The grand jury is investigating whether the motor vehicle accident claims were *bona fide* or fraudulent. Work product prepared in the prosecution of the claims, which would necessarily concern issues of negligence and damages, would have no value as work product to the grand jury; it would have value only as factual evidence. Such relevant facts are always discoverable upon a showing such as the Government has made here. *In re Murphy,* 560 F.2d 326, 337 n. 20 (8th Cir.1977).

■ There has been no claim that any work product on the fact sheets was prepared by the attorney to provide legal advice in anticipation of any grand jury investigation or any criminal proceeding in connection with any past wrongdoing. Furthermore, this Court's *in camera* review of the fact sheets discloses no such work product. A client's communications with an attorney and the attorney's work product concerning the past criminal activity of the client may well be privileged. However, "when a lawyer is consulted, not with respect to past wrongdoing but to future illegal activities, the privilege is no longer defensible and the crime-fraud exception comes into play." *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d at 802. Thus, were the legal work performed in furtherance of crime or fraud the privilege would be inapplicable.

Finally, even apart from the question of whether the instant grand jury proceedings are closely enough related to the personal

injury litigation for which the fact sheets were prepared to support recognition of the work product privilege here, the Court has been persuaded from its *in camera* review of the fact sheets that compliance with this subpoena will not result in the disclosure of any of the lawyer's mental impressions, conclusions, opinions or legal theories. Although a lawyer's summary of the oral statements of a witness or his client can, because it involves his editorial discretion, reveal the lawyer's mental processes, *Upjohn Co. v. United States,* 449 U.S. 383, 398, 101 S.Ct. 677, 687–88, 66 L.Ed.2d 584 (1981), *In re Grand Jury Investigation (Sun Co.),* 599 F.2d at 1231, the fact sheets seek only basic factual information concerning the client and extremely brief factual summaries of the accident. Not one of the thirty-six fact sheets reviewed *in camera* contains any evaluative material, possible strategies or legal conclusions. In addition, these fact sheets were prepared contemporaneously with the interviews, increasing their "reliability as accurate reflections of the witness's statements", as well as their relevance and utility, all factors which weigh in favor of discoverability. *See In re Grand Jury Investigation (Sun Co.),* 599 F.2d at 1231; *In re Grand Jury Subpoena Dated Nov. 8, 1979,* 622 F.2d 933, 935 n. 3 (6th Cir.1980).

In sum, no evidence has been presented to the Court upon which we could conclude that the subpoenaed fact sheets were prepared in contemplation of any criminal investigation or proceeding, and, hence, the possibility the fact sheets might contain some work product prepared in the prosecution of motor vehicle accident claims will not prevent their discovery by the grand jury. Moreover, the Court's review of the fact sheets indicates that they contain only factual information concerning the claims, and no mental impressions, conclusions, opinions or legal theories. Since the fact sheets contain facts relevant to the grand jury investigation, and since the Government has averred that these materials are both necessary to the investigation and unobtainable elsewhere, averments with which we have no basis to quarrel, these

fact sheets are available to the grand jury, with the understanding that the material considered confidential in fact sheets numbers 5, 12, 17, 18, 20, 25 and 29, as shown to the Court *in camera,* be redacted from photocopies of these documents produced to the grand jury.