235 N.J. Super. 212 (1989)
561 A.2d 1186
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID PAUL SCHUBERT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 12, 1989.
Decided July 17, 1989.
*214 Before Judges DEIGHAN and BAIME.
Alfred A. Slocum, Public Defender, attorney for appellant (William E. Graves, designated counsel, on the brief).
John G. Holl, Acting Bergen County Prosecutor, attorney for respondent (Ulrike M. Bergin, Acting Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents novel questions concerning the parameters of the attorney-client privilege. At issue is whether an attorney may disclose information received from his client to law enforcement authorities where he reasonably believes such disclosure will serve his client's interests.
Following a jury trial, defendant David Paul Schubert was found guilty of aggravated arson (N.J.S.A. 2C:17-1a) and was sentenced to a custodial term of seven years. In addition, defendant was assessed a penalty of $30 payable to the Violent Crimes Compensation Board.
On appeal, defendant asserts that (1) his attorney-client privilege was violated resulting in the discovery of incriminating evidence which was presented by the State at trial, (2) the court committed plain error by admitting evidence of other crimes, (3) the police unlawfully searched the trunk of his automobile and (4) he was denied the effective assistance of counsel. In a pro se supplemental brief filed without leave of court on the date this appeal was submitted to us, defendant raises the following additional arguments: (1) he was denied the right of confrontation, (2) the evidence was insufficient to establish his guilt, (3) the prosecutor's prejudicial comments denied him a fair trial, *215 and (4) his attorney failed to present witnesses whose testimony would have tended to exculpate him. We are entirely satisfied from our thorough review of the record that defendant was fairly convicted. We affirm.

I.
The salient facts can be summarized briefly. In September 1984, Robert and Rita Victor purchased a two-family house at 1225 Inwood Terrace in Fort Lee. At the time title was conveyed to the Victors, defendant and his wife were tenants occupying the second-floor apartment. Since the lease the Schuberts had with the prior landlord was about to expire, the Victors offered them a new term but at a substantially higher rent. Apparently, this development enraged defendant who some three weeks later assaulted Mr. Victor in the latter's apartment. During the course of this altercation, defendant allegedly threatened to kill the Victors. Although the police were summoned, defendant left the scene prior to their arrival. The Victors did not consider the threats as serious and they took no further action.
Several days later, the Victors gave defendant a notice requesting permission to inspect his apartment so that it could be rented to other tenants. Defendant refused to accept the notice and threatened to kill any prospective tenant who came upon the premises. Again, the Victors ignored defendant's threats.
Shortly after this second incident, Mr. Victor discovered that his basement was totally flooded. When questioned about the damage, defendant exclaimed that he had forced "a new plastic sheet down the toilet." Mr. Victor thereafter called a plumber who found a plastic sheet "the size of a picnic tablecloth" in the pipe. The plumber also discovered a blockage further down which had been caused by deposits of kitty litter. Immediately after this incident, the Victors discovered that the air had been let out of all four of their automobile tires.
*216 In August, the Victors commenced a summary dispossess action against the Schuberts. This litigation culminated in a settlement in which the Schuberts were given time to move from the premises in return for their promise to pay rent in the interim. The agreement also provided that defendant and his wife were to give 15 days notice before moving.
Despite these requirements, the Schuberts left the premises in September without advising the Victors of their intention to move and without paying the agreed upon rent. When the Victors attempted to follow the moving van in order to obtain the rent owed to them, defendant's wife forced them off the road. She then scratched the Victor's car with her keys and threatened that they would "never get new tenants" to occupy the apartment.
On July 12, 1986, the Victors' home was seriously damaged by fire. Their neighbors reported the fire shortly after 9:00 p.m. immediately following what appeared to them to be a massive explosion. Arson Investigator James Walker of the Hackensack Fire Department responded to the scene and noted that the fire had begun in the front of the house and that a great deal of carbon had run from the top steps to the roof area. The presence of this amount of carbon indicated to the witness that an "accelerant" had been used. Investigator Walker also noticed an odor of gasoline in the area which emanated from a melted plastic container standing at the top of the stairs. The container was later tested positive for the presence of gasoline. The investigator theorized that gasoline had been placed in the container or thrown onto the Victors' house and had then been ignited, causing the explosion and fire.
Investigator John D'Angelo of the Bergen County Prosecutor's Office Arson Squad also responded to the scene of the fire. He too noticed the melted plastic container on the steps of the house. In addition, the investigator observed a milk carton in the bushes near the front entrance. In the course of interviewing the Victors, he was told that defendant was the *217 only person they could think of who might have a motive to start the fire.
This information was relayed to members of the Leonia Police Department. At approximately 11:00 p.m., defendant's automobile, a blue Cadillac, was placed under surveillance by Corporal Carmey Cross. After following the automobile on a circuitous route, the officer observed defendant park and turn off the headlights. Cross approached the car on foot and asked why defendant had stopped. Defendant responded that he knew he was being followed. Smelling the odor of alcohol on defendant's breath, the officer asked Schubert to exit from the automobile. As defendant opened the door, Cross noticed a strong odor of gasoline and an open can of beer on the console. Investigator Angelo and other officers then appeared. At their request, defendant gave the police the keys to the trunk of the vehicle. When the trunk was opened, the officers observed a small "fold-up" infant's bicycle. Defendant was arrested for driving while intoxicated and other traffic violations.
On the next day, defendant telephoned Albert Socolov, a New York attorney, and advised him that the police wished to question him about the fire at the Victors' house. Defendant told Socolov that he had been home on the night of the fire and had left his apartment only briefly to purchase milk and other groceries. Shortly after this conversation, Investigator D'Angelo called Socolov and requested permission to question his client. Socolov testified that D'Angelo told him Schubert was not a "suspect" and was merely one of a number of individuals sought for questioning. In D'Angelo's detailed report, however, the investigator related that he had told Socolov he "was not accusing" defendant of committing the arson. In any event, Socolov responded that defendant was extremely upset at being a "suspect" in the crime and had told him he was home on the night in question and had gone out only to purchase milk. Socolov refused to permit D'Angelo to question Schubert.
*218 However, remembering the presence of the milk carton at the scene of the fire, D'Angelo immediately contacted Mr. Victor who retrieved it. Following this, the police conducted a canvass of Leonia and Fort Lee, attempting to find who might have purchased a quart of milk and a container of gasoline on the night of the fire. Their efforts led them to discover that at approximately 8:00 p.m. on the evening of July 12, 1986, defendant had purchased a quart of Farmland milk at the Garden State Deli in Fort Lee. The owner of the store, Maria Conforti, told the police defendant also had asked for an empty container. Finding none, defendant drove away in a blue Cadillac with the trunk open and a bicycle inside. Further investigation revealed that defendant had driven to a nearby Gulf Station where he had asked for benzene and, being unsuccessful, had then proceeded to a Shell station across the street, where he unsuccessfully attempted to purchase "octane booster."
Investigators also discovered that on the evening in question, defendant had purchased gasoline at the Triangle Exxon Station in Fort Lee. Defendant asked one of the employees to fill a container he had brought with him. Although the attendant was initially reluctant to fill the plastic container because there was no cap, defendant persisted. After having the container filled, defendant "stuffed a rag" into the top, placed it on the back seat of the automobile and drove away.
Defendant elected to testify. In the course of his testimony, defendant admitted that he had purchased milk at the Garden State Deli and had asked for an empty container, which he wanted to use to clean his windshield. He also conceded that he had attempted to purchase "octane booster" on the same night. Defendant claimed, however, that he was having automobile trouble at the time and intended to use the "octane booster" on his Cadillac.
Based on the foregoing evidence, defendant was found guilty of aggravated arson. This appeal followed.

*219 II.
We first address defendant's argument that his attorney-client privilege was violated when his lawyer told Investigator D'Angelo he was home on the night of the fire and had left his apartment to purchase milk. In our recital of the facts, we have described the circumstances surrounding that disclosure. We emphasize at this point, however, that D'Angelo's conversation with Socolov was related at a pretrial hearing. At trial, no mention was made of defendant's conversation with Socolov or the latter's discussion with D'Angelo. Defendant contends, however, that since the significance of the Farmland milk carton was realized only by reason of Socolov's disclosure to D'Angelo and since it formed the linchpin in the later discovery of a chain of incriminating circumstances, his conviction must be reversed.
We disagree. In our view, defendant's argument must be rejected because (1) the attorney's disclosure of what he perceived to be wholly exculpatory information in an attempt to lead the investigation away from his client was not inconsistent with the evidentiary privilege, and (2) the information divulged by the lawyer was not obtained by trickery or improper deception. We consider these points sequentially.
Initially, we are convinced that there is no ethical or legal prohibition barring an attorney from disclosing information he has obtained from his client to a law enforcement official where he reasonably believes such disclosure will serve to exculpate or exonerate him. Of course, we recognize that a lawyer's duty to respect confidences is of singular importance and is well-established in our law. See, e.g., State v. Sugar, 84 N.J. 1, 13 (1980); State v. Bellucci, 81 N.J. 531, 543 (1980); State v. Land, 73 N.J. 24, 35 (1977). The attendant privilege protecting the confidentiality of information furnished by a client to his attorney is rooted in precedent, see Matter of Nackson, 114 N.J. 527, 531 (1989); Fellerman v. Bradley, 99 N.J. 493, 498 (1985); In re Kozlov, 79 N.J. 232, 243 (1979); In *220 re Selser, 15 N.J. 393, 403 (1954); State v. Toscano, 13 N.J. 418, 424 (1953), and is now embodied in Evid.R. 26 and N.J.S.A. 2A:84A-20. Originally, the privilege was based upon a concern for the "oath and honor of the attorney" rather than regard for the protection of the client and the furtherance of justice. 8 Wigmore, Evidence § 2290, pp. 547-548 (3d ed. 1940). By the 19th century, however, the courts based the privilege on the need for consultation between attorney and client without fear of public disclosure. In re Selser, supra, 15 N.J. at 404. Since the protection of the privileged communication is not for the attorney, but rather for the client, not only may the client alone waive the privilege, but the attorney, if called upon to divulge confidential communications, must assert it. Fellerman v. Bradley, supra, 99 N.J. at 498; In re Selser, supra, 15 N.J. at 404. See also Callen & H. David, "Professional Responsibility and the Duty of Confidentiality: Disclosure of Client Misconduct in an Adversary System," 29 Rutgers L.Rev. 332, 337 (1976). It has thus been said that "the privilege belongs to the client, rather than the attorney." Fellerman v. Bradley, supra, 99 N.J. at 498.
This much conceded, the metes and bounds of the privilege must be anchored in the reason for its existence. Stated otherwise, we perceive no violence to the fundamental policy underlying the privilege where an attorney, in an honest attempt to protect or exonerate his client, provides law enforcement authorities with information he reasonably believes will serve that goal.
We stress that the lawyer-client privilege encompasses only confidential communications. See Evid.R. 26(1). A communication "made in the course of [the] relationship between [a] lawyer and client," under our rules, is "presumed to have been made in professional confidence." Evid.R. 26(3). To that extent, our evidentiary rule has somewhat modified the common law doctrine that "[a] mere showing ... the communication was from client to attorney does not suffice, but the *221 circumstances indicating the intention of secrecy must appear." McCormick, Evidence, § 91, pp. 187-188 (Cleary ed. 1972). However, it remains the essence of the privilege that it is limited to those communications which the client either expressly made confidential or which he could reasonably assume under the circumstances would be understood by the attorney as so intended. Ibid. It is not asking too much to insist that if a client wishes to preserve the privilege, he must take some affirmative action to insure confidentiality. See In re Horowitz, 482 F.2d 72, 82 (2d Cir.1973), cert. den. 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); Sew'n Sweep, Inc. v. Swiss-Bernina, Inc., 91 F.R.D. 254, 258-259 (N.D.Ill. 1981). "Taking or failing to take precautions may be considered as bearing on the intent to preserve" secrecy. In re Horowitz, supra, 482 F.2d at 258-259. It has thus been held that "[c]ommunications made with no expectation of confidentiality are... not protected by the privilege." In re Grand Jury Investigation, 557 F. Supp. 1053, 1056 (E.D.Pa. 1983). See also In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir.1984); Weil v. Investment Indicators, Research & Management, 647 F.2d 18, 24-25 (9th Cir.1980); United States v. Willis, 565 F. Supp. 1186, 1204-1205 (S.D.Ia. 1983). Therefore, a statement or communication made by a client to his attorney with the intent and purpose that it be communicated to others is not privileged. In re Grand Jury Proceedings, supra, 727 F.2d at 1356; United States v. Pipkins, 528 F.2d 559, 563 (5th Cir.1976), cert. den. 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); United States v. Cote, 456 F.2d 142, 144 (8th Cir.1972); Colton v. United States, 306 F.2d 633, 638 (2d Cir.1962), cert. den. 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); United States v. Tellier, 255 F.2d 441, 447 (2d Cir.1958), cert. den. 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1959); Wilcoxon v. United States, 231 F.2d 384, 386 (10th Cir.), cert. den. 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1956). "Nor is the loss of the privilege confined to `the particular words used to express the communication's content' but extends `to the substance of a communication,' *222 since the disclosure of `any significant part' of a communication waives the privilege and requires the attorney to disclose `the details underlying the data which was to be published.'" In re Grand Jury Proceedings, supra, 727 F.2d at 1356, quoting United States v. Cote, supra, 456 F.2d at 145. See also In re Grand Jury Investigation (Tinari), 631 F.2d 17, 19 (3d Cir.1980); United States v. Alvarez, 519 F.2d 1036, 1047 (4th Cir.1975).
Against this backdrop, we are satisfied that defendant's attorney had the implied authority to impart what he perceived to be wholly exculpatory information to the prosecutor's investigator in his attempt to protect the interests of his client. See United States v. Martin, 773 F.2d 579, 583-584 (4th Cir.1985); United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982); United States v. Bump, 605 F.2d 548, 550-551 (10th Cir.1979); United States v. Mierzwicki, 500 F. Supp. 1331, 1334-1335 (D.Md. 1980). We discern no ethical or legal violation in that respect. See R.P.C. 1.6(a). Defendant's authorization to Socolov to deal with the prosecutor's office to effect a favorable conclusion of its investigation provided the attorney with a limited license to disclose exculpatory information in furtherance of his mission. The information so provided did not fall within the purview of protected confidential information.
So too, we are convinced that D'Angelo was not guilty of deception or trickery when he obtained the information from Socolov. Unfortunately, the record is largely uninformative with regard to exactly what representations were made by D'Angelo in the course of his discussion with Socolov. As we mentioned previously, Socolov testified that D'Angelo told him defendant was not a "suspect." In his report, however, D'Angelo recalled that he merely told Socolov he was not "accusing" his client of committing the arson. The trial court did not deem the precise language employed by D'Angelo material to the issue raised, and, therefore, made no specific finding of fact in that respect.
*223 In subsequent proceedings dealing with another matter, however, D'Angelo testified that he did not consider Schubert to be a "suspect," although he was aware of the "possibility" that he had committed the crime. In that context, D'Angelo emphasized that defendant's threats against the Victors had been made four months prior to the fire and that the cause of the acrimonious relationship between the two families, the tenancy, had long since ended. Although D'Angelo was present when defendant's car was stopped on July 12, 1986, and was thus aware of the fact that it smelled of gasoline, the investigator had apparently accepted at face value Schubert's representation that the odor was the result of a defect in his automobile. The trial court expressly found that D'Angelo's testimony was credible and that based on the circumstances, the investigator had reasonably believed defendant was not a "suspect" when he contacted Socolov and requested permission to question his client. There is ample support in the record for this finding. See State v. Johnson, 42 N.J. 146, 162 (1964).
Putting semantics aside, the claim that Socolov would not have disclosed information to D'Angelo had he known that his client was a "suspect" appears to be highly disingenuous. Socolov knew that an investigation was ongoing and was aware of the fact that his client was wanted for questioning. As Socolov conceded in his discussion with D'Angelo, defendant had told him he was "very upset" because he was considered a "suspect" in the arson. In this context, we are firmly convinced that D'Angelo was not guilty of overreaching and that the information disclosed to him in the course of his discussion with Socolov was not obtained by unfair trickery or deception.
Even were we to assume that the disclosure by Socolov constituted a breach of the attorney-client privilege, defendant would fare no better. Assuming that the privilege was somehow breached, the remedy urged by defendant, suppression of all information pertaining to the incriminating circumstances later learned by the prosecution, can fairly be characterized as draconian and wholly unnecessary. Whatever else may be said *224 about the conduct of D'Angelo and Socolov, it cannot compare to the egregious violation of the attorney-client relationship in State v. Sugar, supra. At best, evidence concerning the discussion between D'Angelo and Socolov would be suppressed. Surely, that course would be adequate to vindicate the defendant's rights.
We need not dwell upon the subject, however. We find no violation of the attorney-client privilege in this case.

III.
The remaining arguments set forth in defendant's principal and pro se supplemental briefs are clearly without merit and do not require extended discussion. R. 2:11-3(e)(2). We merely offer the following brief comments concerning defendant's contention that the trial court erroneously admitted evidence of other crimes and his claim that the search of his automobile contravened the Fourth Amendment's prohibition against unlawful searches and seizures.
We are entirely unpersuaded by defendant's assertion that the trial court erred by admitting evidence relating to his prior threats against the Victors. Defendant's acrimonious relationship with his former landlords was admissible as tending to establish his motive for committing the arson. See Evid.R. 55. See also State v. Stevens, 115 N.J. 289 (1989). Although the trial court should have given a limiting instruction to the jury, see Evid.R. 6, no request for such a charge was made and we perceive no error in this respect "clearly capable of producing an unjust result." R. 2:10-1. See also State v. Rajnai, 132 N.J. Super. 530, 537-538 (App.Div. 1975).
Equally devoid of substance is defendant's contention that the search of the trunk of his car was violative of the Fourth Amendment. Corporal Cross did not act unreasonably when he approached defendant's vehicle, which was parked at the curb, and inquired as to why he had stopped. The officer's visual observation of an open beer on the console and the odor *225 of alcohol emanating from Schubert's breath established a reasonable basis for believing defendant was intoxicated. When defendant opened the door to exit from the automobile, the officer noticed a strong smell of gasoline. Defendant was wanted for questioning pertaining to a recent arson in which gasoline had been the accelerant. Under these circumstances, we are satisfied that probable cause existed for the officers to search the trunk of defendant's automobile. See State v. Esteves, 93 N.J. 498, 507 (1983).

IV.
Accordingly, the judgment of conviction is affirmed.