NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2152-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SANDRO VARGAS,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 4, 2020**
>
> **APPELLATE DIVISION**

Submitted November 4, 2019 – Decided June 4, 2020

Before Judges Messano, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-08-1756.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan Brody, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Stephen Anton Pogany, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

A jury found defendant guilty of first-degree purposeful murder of his former girlfriend, and the court sentenced him to a thirty-year sentence, with a thirty-year parole disqualifier. On appeal, defendant challenges two evidentiary rulings: (1) the court's decision to admit the victim's daughter's testimony that, a few months before the homicide, defendant threatened the victim, "if she wasn't with him she wouldn't be with anybody," and (2) the court's denial of defendant's motion to exclude his two custodial statements. He contends the probative value of the threatening statement was substantially outweighed by its prejudice. And he contends the use of Spanish-speaking officers, rather than neutral interpreters, rendered his waiver of his Miranda[1] rights involuntary.

We reject both these arguments and affirm. Only the first argument warrants our extended discussion. For reasons we discuss below, we conclude the court reached the right result – admitting into evidence the threatening statement – but for the wrong reason. The court held the statement was admissible as a statement of a party opponent under N.J.R.E. 803(b)(1), despite also finding it inadmissible under N.J.R.E. 404(b). We conclude the statement had to satisfy both rules, and it did; therefore, there was no error in admitting it into evidence at trial.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

I.

According to the State's proofs, Patricia Hiciano had an intimate, but rocky, relationship with defendant, who was married. She was the single parent of four children, and worked at a Newark restaurant. A few months before the homicide, defendant pushed his way into Hiciano's home. Hiciano and defendant argued. Hiciano's teenage daughter testified at a pre-trial N.J.R.E. 104 hearing that defendant was drunk, and she overheard him threaten her mother, "if you can't be with me, then you can't be with anyone." At trial, the daughter testified, "he said . . . he was tired of telling her that if she wasn't with him she wouldn't be with anybody." Defendant confirmed in his custodial interview that he was last intimate with Hiciano about five months before the murder.[2]

The night of the murder, defendant showed up at Hiciano's restaurant shortly before her shift ended. He ate dinner at the bar and drank several beers. A friend of defendant, Jose Luis Silva Lopez, happened to enter, and joined him. Lopez testified at trial that defendant told him he intended to have sex with Hiciano at a hotel later than evening. But, incongruously, he showed

---

[2] The daughter testified at the Rule 104 hearing that defendant threatened her mother four to five months before she was killed, but expressed some uncertainty about the precise date. At trial, she agreed with the prosecutor's suggestion that the threat was made "a few months" before the homicide, but could not pinpoint the date on cross-examination.

Lopez a photo of Hiciano with her new boyfriend. Lopez testified that defendant appeared jealous. Defendant also told Lopez that he had a compromising video of Hiciano that could get her in trouble with her boss.

Eventually, Lopez and Hiciano accepted rides home from defendant. He had his wife's Honda. Defendant dropped Lopez off first. The State established defendant's whereabouts thereafter based largely on recordings from video surveillance cameras at various points along his route. After dropping off Lopez, defendant drove to a hotel. But, rather than enter with defendant, Hiciano left the car and walked away. Defendant followed slowly in the car, then drove off as Hiciano went to a Domino's pizzeria to buy a pizza she promised her children. She waited there for over twenty minutes, and then walked roughly half a mile home with the pizza. As she approached her building, minutes before 10:30 p.m., she spoke by phone to a male friend.[3] She told him she would call him once she arrived home. But she never did.

While Hiciano was getting her pizza, defendant was recorded parking and then exiting his car around the block from her building. He had plenty of time to reach her apartment building to await her arrival. Shortly after 10:30 p.m., a resident of the first floor apartment heard a scuffle in the vacant

_____

[3] The friend testified at trial that he had known Hiciano for two or three months, but he did not expressly state whether they had a romantic relationship.

apartment above her, including muffled screams and the sound of athletic shoes – like those defendant wore that night – squeaking on the floor. A few minutes later, defendant was recorded returning to his car and leaving. About an hour later, he was recorded arriving at his home, although a drive directly from Hiciano's home to defendant's was much quicker.

First confronted by Hiciano's family, and then by the police, defendant gave a series of inconsistent statements about his whereabouts. That night, Hiciano's daughter fell asleep thinking her mother was simply delayed. The next morning, after discovering her mother had not returned at all, she telephoned defendant, but the call went to voicemail. She then called one of her mother's co-workers who happened to be with defendant at the time, and he put him on the phone. The daughter asked defendant if he had seen her mother. He lied that he had not seen her in a while. He then pretended he had a bad connection, and hung up. The daughter then reported her mother missing to the police.

The same day, Hiciano's sister, after some difficulty, reached defendant by telephone to inquire about her sister. This time, defendant lied that he dropped her off in front of her apartment the night before, drove off, and then never saw her again.

In the course of an unrelated investigation, five days after Hiciano failed to come home, police discovered her body in a vacant second-floor apartment. An expert testified she had been strangled to death. Another expert testified that DNA matching defendant's was found under her fingernails. The State also presented evidence that small pieces of debris found on the Honda's driver's side floor matched debris from the apartment where Hiciano was killed.

When first questioned by police, defendant insisted he dropped Hiciano off across the street from her building. He said a group of men and a woman had congregated there, evidently suggesting they may have been the killers. Over the course of two interviews, defendant shifted his story as police confronted him with what they had learned from the video surveillance and other aspects of their investigation. He ultimately insisted he last saw her soon after she left his car in front of the hotel. He maintained that Hiciano had proposed to have sex with him, but she changed her mind, got out of his car, and walked away from him. He denied going into her building, and he denied killing her.

Defendant did not testify or present any defense witnesses. Defense counsel argued in summation that the police planted the debris in defendant's car. She contended that Hiciano would not have gone to the second-floor

apartment willingly with defendant, but no witness testified hearing a struggle on the stairs or in the hallway, and the pizza dinner sat undisturbed. She also asserted discrepancies in the State's timeline. She suggested the DNA evidence could have come from prior contacts with defendant; and there was insufficient time between Hiciano's arrival, and defendant's departure, to commit murder.

The assistant prosecutor reviewed the evidence we have already described. He referred to defendant's threatening statement to Hiciano, as recounted by her daughter, and asserted that was proof of his motive.

The jury found defendant guilty of purposeful murder.

Defendant raises the following two points on appeal:

POINT I

THE COURT ERRED IN FINDING TESTIMONY OF THE VICTIM'S DAUGHTER ABOUT DEFENDANT'S PRIOR VERBAL STATEMENT TO HER MOTHER ADMISSIBLE.

POINT II

DEFENDANT'S STATEMENTS TO POLICE SHOULD NOT HAVE BEEN ADMITTED BECAUSE UNTRAINED POLICE OFFICERS WERE USED AS SPANISH INTERPRETERS, RESULTING IN ERRORS THAT COULD WELL HAVE AFFECTED THE OUTOME OF THE TRIAL

A. Amateur interpreters produce unreliable translations.

B. Using inherently biased police interpreters compromises the interrogation.

C. In this specific case, it was evident that the integrity of Vargas's statement was compromised and that the voluntariness of his waiver cannot be presumed.

## II.

We reject defendant's contention that the court erred in admitting his out-of-court statement to the victim. However, we do so for reasons other than those the trial court presented. See Hayes v. Delamotte, 231 N.J. 373, 386-87 (2018) (stating that "[a] trial court judgment that reaches the proper conclusion must be affirmed even if it is based on the wrong reasoning"); see also State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011).

## A.

The trial court rejected the State's argument that defendant's threatening statement was admissible under N.J.R.E. 404(b) to prove his motive to kill the victim. After a pre-trial N.J.R.E. 104 hearing, the court applied the four-pronged test under State v. Cofield, 127 N.J. 328, 338 (1992).[4] The court

---

[4] The test requires that other-crimes-or-wrongs evidence be "admissible as relevant to a material issue," "similar in kind and reasonably close in time to the offense charged," and "clear and convincing"; and "[t]he probative value of the evidence must not be outweighed by its apparent prejudice." Cofield, 127 N.J. at 338 (quoting Abraham P. Ordover, Balancing The Presumptions of

found by clear and convincing evidence that defendant made the statement, as the court found the daughter to be credible. The court also found that the statement pertained to a material issue – motive. The court expressed some uncertainty whether the statement was reasonably close in time, although it referred to an act that was similar in kind to the charged offense. However, applying the fourth <u>Cofield</u> prong, the court denied admissibility under N.J.R.E. 404(b), finding, "[T]here is sufficient other evidence to demonstrate defendant's motive for the murder, thus, the apparent prejudice to defendant does outweigh the probative value." Nonetheless, accepting the State's alternative argument, the court held that defendant's statement was admissible because it was a statement of a party opponent under N.J.R.E. 803(b)(1).

Defendant does not challenge the court's ruling that Rule 803(b)(1) provided an independent ground for admitting defendant's statement, notwithstanding the court's judgment that it failed the <u>Cofield</u> test. Rather, defendant contends that the court should have excluded defendant's statement because, under N.J.R.E. 403, its probative value was "substantially outweighed by the risk of . . . undue prejudice." In the pre-trial hearing, defendant did not invoke N.J.R.E. 403 as a separate basis for excluding the statement. So, we

<u>Guilt And Innocence: Rules 404(b), 608(b), And 609(a)</u>, 38 Emory L. J. 135, 160 (1989)).

consider the point as a claim of plain error.  See State v. Macon, 57 N.J. 325, 333 (1971); R. 2:10-2.

In support of his argument, defendant invokes the court's finding, under the Cofield test's fourth prong, that the threatening statement's probative value was outweighed by its prejudice.  Defendant contends that the fourth prong balancing and the N.J.R.E. 403 balancing are essentially the same.

Defendant's argument rests on a false premise.  The two balancing tests are not equivalent.  The Cofield prong presents a more rigorous test for admitting evidence.  The Supreme Court declared that the fourth Cofield prong "requires an inquiry distinct from the familiar balancing required under N.J.R.E. 403: the trial court must determine only whether the probative value of such evidence is outweighed by its potential for undue prejudice, not whether it is substantially outweighed by that potential as in the application of Rule 403."  State v. Green, 236 N.J. 71, 83 (2018) (citing State v. Barden, 195 N.J. 375, 389 (2008)).

For reasons stated below, we reject defendant's contention that the potential of undue prejudice "substantially outweighed" the probative value of his threatening statement to the victim.  However, we are constrained to review the court's application of the Cofield factors, because we are convinced the trial court erred in holding that a party opponent's statements may be admitted

under the hearsay exception, N.J.R.E. 803(b)(1), even if it is otherwise inadmissible as other evidence of crimes, wrongs or acts to prove motive under N.J.R.E. 404(b). To be admissible, defendant's statement must satisfy both the hearsay exception and N.J.R.E. 404(b). And, even if evidence is "relevant under N.J.R.E. 404(b), such evidence must nevertheless survive the crucible for all relevant evidence," under N.J.R.E. 403. State v. Lykes, 192 N.J. 519, 534-35 (2007) (noting that evidence admissible under N.J.R.E. 404(b) may be excluded if under N.J.R.E. 403, "its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence").

We conclude the court erred in finding that the statement's prejudice outweighed its probative value under the fourth Cofield prong. Necessarily, the statement did not fail the less demanding prejudice-probativeness weighing under N.J.R.E. 403, nor did it fail any other Rule 403 test. Therefore, defendant's statement was admissible because it satisfied N.J.R.E. 404(b) and N.J.R.E. 403, as well as N.J.R.E. 803(b)(1).

Testimony that meets an exception to the general exclusion of hearsay, see N.J.R.E. 802, may still be excluded on other grounds. By its plain language, N.J.R.E. 803 does not affirmatively declare certain hearsay

11

statements admissible. Rather, N.J.R.E. 803 simply declares that "[t]he following statements are not excluded by the hearsay rule," found in N.J.R.E. 802. That leaves open the possibility of exclusion on other grounds. As the Supreme Court Committee Comment states, "[T]he exceptions 'are phrased in terms of nonapplication of the hearsay rule, rather than in positive terms of admissibility, in order to repel any implication that other possible grounds for exclusion are eliminated from consideration.'" 1991 Supreme Court Committee Comment to N.J.R.E. 802 (quoting Notes of Advisory Committee on Proposed Rules, Note to Fed. R. Evid. 803 (1984)); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment on N.J.R.E. 803(b)(1) (2019) (noting that "[i]n appropriate cases other constitutional, statutory or rule requirements might preclude a statement admissible under [N.J.R.E. 803(b)(1)]").

In particular, admissible hearsay must avoid the exclusions found in Article IV of our Rules of Evidence. Some hearsay exceptions are grounded in the policy judgment that certain out-of-court statements are inherently reliable or trustworthy because of the speaker's position or motivation, or the context in which the statements were made, among other factors. See State v. Phelps, 96 N.J. 500, 508 (1984) (stating that hearsay exceptions "are justified primarily because the circumstances under which the statements were made

provide strong indicia of reliability"). The exception for statements of a party opponent is based on the idea that such statements are usually quite probative, see State v. Covell, 157 N.J. 554, 573-74 (1999), and the party, "cannot complain of his inability to confront and cross-examine the declarant, since he himself is the declarant," State v. Kennedy, 135 N.J. Super. 513, 522 (App. Div. 1975).

Yet, Article IV addresses different goals. They include assuring that evidence – however trustworthy, reliable, or probative – is relevant, see N.J.R.E. 402; is not unduly prejudicial, confusing or time-consuming, see N.J.R.E. 403; and, generally speaking, is not used simply to impugn the defendant's character, or to paint the defendant as a bad person, prone to commit crimes or bad acts, see N.J.R.E. 404. Applying comparable federal rules, one federal court succinctly stated, "All evidence, including evidence that qualifies as an exception to the hearsay rule, must be relevant, as defined in Article IV of the Federal Rules of Evidence." United States v. Micke, 859 F.2d 473, 479 (7th 1988).

In State v. Covell, 157 N.J. 554, 573-74 (1999), our Supreme Court affirmed the principle that a defendant's statement, which was admissible under N.J.R.E. 803(b)(1), still had to pass muster under N.J.R.E. 403 – that is, its probative value must not have been substantially outweighed by the risk of

undue prejudice, among other risks. Likewise, a defendant's statement about a prior crime, wrong or act – even if it satisfies a hearsay exception – must overcome the N.J.R.E. 404(b) hurdle. N.J.R.E. 404(b) is a rule of exclusion. Green, 236 N.J. at 84. In other words, the party opponent's statement may not be admitted to show propensity to commit a crime; but it may be admitted to show motive, among other things, provided the statement is proved by clear and convincing evidence; it pertains to a material issue; it is similar in time and reasonably close in time in appropriate cases; and the probative value is not outweighed by prejudice to the defendant. See Cofield, 127 N.J. at 338.

We have found no reported New Jersey case that expressly states this evident principle, but federal courts have recognized that a statement of a party opponent, although admissible under federal hearsay rules, must still satisfy the constraints on introducing other crimes, wrongs and acts evidence. "Although the statements are party admissions under [Federal] Rule [of Evidence] 801(d) and thus not hearsay,[5] they must nevertheless also be analyzed for admissibility under Rule 404(b) because they reveal or suggest prior criminal conduct." United States v. Oberle, 136 F.3d 1414, 1418 (10th

_____

[5] Under our rules, a party opponent's statement is hearsay, but admissible under an exception to the hearsay rule. N.J.R.E. 803(b)(1). Under the federal rule, a party opponent's statement is excluded from the hearsay definition itself. Fed. R. Evid. 801(d).

A-2152-17T1

Cir. 1998); see also United States v. Simpson, 479 F.3d 492, 502 n.2 (7th Cir. 2007) (stating, "[t]hat a statement is not hearsay . . . does not answer the separate question of whether the statement is precluded as improper propensity evidence"), abrogated in part on other grounds in United States v. Boone, 628 F.3d 927 (7th Cir. 2010); Micke, 859 F.2d at 478-79 (holding that trial court properly applied Fed. R. Evid. 403 and 404(b) to defendant's statement otherwise admissible under Fed. R. Evid. 801(d)(2)).

B.

Although N.J.R.E. 404(b) presented a separate hurdle for admitting defendant's statement, notwithstanding it satisfied a hearsay exception, we are convinced that the court erred, and defendant's statement satisfied the Cofield test for admissibility under N.J.R.E. 404(b). In particular, the evidence did not support the court's conclusion that the prejudice to defendant outweighed the statement's probative value.[6]

---

[6] Although the State does not challenge the court's Cofield analysis on appeal – indeed, it has conceded its correctness – we discern no impediment in our addressing the issue. The interests of justice require it, and defendant fully briefed the balancing between the statement's probative value and its prejudice, albeit in the context of N.J.R.E. 403. Cf. Office of Employee Relations v. Commc'ns Workers of Am., 154 N.J. 98, 108 (1998) (stating that a court will ordinarily not introduce an issue the parties have not raised unless the interests of justice require it, and the parties have had a chance to address the issue).

We are mindful of our deferential standard of review of trial court evidentiary rulings. See, e.g., State v. Brown, 170 N.J. 138, 147 (2001). But, "[w]e owe the trial court's evidentiary findings reasoned deference, not blind deference." State ex rel. A.R., 234 N.J. 82, 106 (2018). Although we may not simply substitute our judgment for the trial court's, we shall not affirm an evidentiary ruling that represents "a clear error of judgment." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

We focus on the fourth Cofield prong. The court found that the evidence met the materiality prong, and the clear-and-convincing evidence prong. And, the temporality aspect of the second prong, about which the court expressed some uncertainty, need not apply. As the Court noted in State v. P.S., 202 N.J. 232, 255 n.4 (2010), the similarity-and-temporality prong is not based in the text of N.J.R.E. 404(b); the prong "need not receive universal application in Rule 404(b) disputes"; and "[i]ts usefulness as a requirement is limited to cases that replicate the circumstances in Cofield." Notably, Cofield involved proof that the defendant constructively possessed certain drugs, because he possessed similar drugs shortly after the event subject to prosecution. See State v. Williams, 190 N.J. 114, 131 (2007) (discussing Cofield and limiting resort to similarity and temporality prong).

A-2152-17T1

In any event, defendant's threat, just a few months before the homicide, was not too remote. See State v. Ramseur, 106 N.J. 123, 264-67 (1987) (holding that evidence of a threat and assault a year-and-a-half before the victim's stabbing death, and of additional threats four months and three months before the death, was not too remote to prove motive and intent); State v. T.C., 347 N.J. Super. 219, 234 (App. Div. 2002) (admitting evidence that defendant mistreated child prior to a five-year absence, to demonstrate malice, hatred, and intent to harm child, in prosecution that the defendant endangered the child's welfare after he returned to the defendant's custody).

Although the fourth Cofield prong is generally the most difficult to satisfy, see State v. Barden, 195 N.J. 375, 389 (2008), "evidence of motive or intent, 'require[s] a very strong showing of prejudice to justify exclusion,'" Green, 236 N.J. at 84 (quoting State v. Garrison, 228 N.J. 182, 197 (2017)); Covell, 157 N.J. at 570-71 (affirming that principle). "A wide range of motive evidence is generally permitted, and even where prejudicial, its admission has been allowed in recognition that it may have 'extremely high probative value.'" State v. Rose, 206 N.J. 141, 165 (2011) (quoting State v. Long, 173 N.J. 138, 164-65 (2002)). "Where the prosecution has a theory of motive that rests on circumstantial evidence, that evidence should not be excluded merely because it has some capacity to inflame a juror's sensibilities; to hold otherwise would

preclude a jury from inferring a defendant's 'secret design or purpose.'" State v. Calleia, 206 N.J. 274, 294 (2011).

The court must consider whether "other less prejudicial evidence may be presented to establish the same issue," which would favor exclusion. Green, 236 N.J. at 84 (quoting Rose, 206 N.J. at 161). Put another way, the court must consider whether excluding the evidence would unduly damage the State's case. See State v. Stevens, 115 N.J. 289, 303 (1989) (stating that "[t]he trial judge should be careful to exclude other torts or crimes evidence . . . wherever he can reasonably do so without damaging the plaintiff's or prosecutor's case" (quoting 1963 Report of the New Jersey Supreme Court Committee on Evidence, Comment on Rule 55, at 103)); see also Barden, 195 N.J. at 389.

Given its critical role in proving motive or intent, our Supreme Court has held evidence of prior threats or assaults admissible despite claims of prejudice. See Ramseur, 106 N.J. at 264-67 (holding admissible evidence of threats and violence preceding homicide, and noting that "[e]vidence of arguments or violence between a defendant and homicide victim has been admitted in prior New Jersey cases," and reviewing those cases); see also State v. Machado, 111 N.J. 480, 488-89 (1988) (holding admissible, to prove motive for murder, testimony that the defendant pushed and yelled at his girlfriend

after she expressed intent to have an abortion). The Court has also held that evidence may be admitted under N.J.R.E. 404(b) to prove acts of jealousy toward a girlfriend, which established "intent, motive, and the absence of an accident" in shooting her male friend. State v. Nance, 148 N.J. 376, 388-89 (1997).

Our court also reached similar conclusions regarding evidence of prior threats, mistreatment, or acts of jealousy. See T.C., 347 N.J. Super. at 234-35 (holding that prejudice did not outweigh the probative value of prior mistreatment evidence, because it was not offered "to show a general 'disposition' to commit crimes or to show that defendant acted 'in conformity' with such a disposition," but was admitted to show the defendant's hostility toward the victim and her motive and intent); State v. Angoy, 329 N.J. Super. 79 (App. Div. 2000) (admitting evidence of prior jealousy-driven assault to prove purposeful murder)[7]; State v. Engel, 249 N.J. Super. 336, 372-74 (App. Div. 1991) (admitting evidence of the defendant's prior threats and violence to

---

[7] In Angoy, the defendant's own statement of why he killed the victim did not preclude admission of evidence of prior threats or violence to prove motive. The defendant argued passion-provocation manslaughter in lieu of murder. The victim's mother testified that one month before the homicide, the defendant choked her daughter and stated he did so because she had dated a white man. Angoy, 329 N.J. Super. at 85-88. We held the mother's testimony was admissible to prove motive or intent, notwithstanding a police officer's testimony that defendant said he killed the victim because she gave him a sexually transmitted disease. Id. at 83.

prove motive for hiring a hit man to kill his wife); State v. Schubert, 235 N.J. Super. 212, 224 (App. Div. 1989) (admitting evidence the defendant previously threatened his landlords over rent increase to demonstrate motive to commit arson after he moved from the premises); State v. Breakiron, 210 N.J. Super. 442, 460-61 (App. Div. 1986) (admitting evidence of prior violence and threats against girlfriend and former boyfriend to prove jealousy-based motive for murder and "to dispel the impression created by [the] defendant's evidence that a purposeful or knowing murder was inconsistent with the couple's loving relationship"), aff'd in part and rev'd in part on other grounds, 108 N.J. 591 (1987).

## C.

Applying these principles, it was a clear error in judgment for the trial court to find that the probative value of defendant's prior threat was outweighed by the prejudice. There was little risk that the jury would, based on the daughter's testimony, "convict the accused simply because the jurors perceive[d] him to be a 'bad person,'" which is the danger that N.J.R.E. 404(b) is designed to prevent. See Ramseur, 106 N.J. at 265. No doubt, the statement demonstrated that defendant was hypocritical, as he insisted upon his paramour's fidelity while he cheated on his own wife; he was domineering, as he had no right to control his girlfriend's decision to be intimate with other

men, or to stop being intimate with defendant; and he was threatening, without saying how he would stop Hiciano from seeing other men. But, the clear import of defendant's statement was to explain why he killed her. He was possessive, he would not tolerate rejection, and he would prevent her from seeing other people, one way or another. Proof of that state of mind supported his motive to kill her. It dispelled his claim in his police interview that she was the one who proposed to have sex with him, and that he was not upset when she got out of his car, rather than enter the hotel with him.[8]

There was no evidence of defendant's motive and intent comparable to the daughter's testimony of his threatening statement. Defendant cites Lopez's opinion that defendant was jealous; the daughter's general description of defendant's failing relationship with her mother; and the video surveillance evidence of defendant's whereabouts the night of the homicide. None of that measures up to the probative power of defendant's threat. Lopez testified that merely defendant's demeanor – not anything he actually said – reflected defendant was jealous when he showed Lopez a photograph of Hiciano and her

---

[8] The jury did not need to hear defendant's threatening statement to conclude he was a despicable man. Putting the statement aside, the jury learned he cheated on his wife. He told Lopez that he had compromising photos that could get Hiciano in trouble with her boss; photos he could use to pressure her to do what he wanted. When her daughter and sister desperately tried to locate her, defendant lied to them.

new boyfriend. Lopez's opinion was no substitute for defendant's own expression of his anger and possessiveness, and his intention to act on those feelings.

Likewise, the daughter's testimony that defendant and her mother argued often and their relationship became "problematic" could be explained away simply as proof the two were no longer suited for each other. It did not convey, as defendant's statement did, that he would have Hiciano, or no one would. Lastly, the surveillance video recordings demonstrated defendant's physical opportunity to commit murder. They also indicated what may have been the precipitating event, when the victim got out of the car, rather than enter the hotel. But, the evidence did not demonstrate, as clearly as defendant's own statement, his state of mind and his intention to kill to her, to punish her for rejecting him, and to prevent her from seeing other men. In short, there was no compelling evidence to establish defendant's motive for murder that was less prejudicial to defendant than his own statement.

In sum, the admission of defendant's threatening statement does not warrant reversal. The statement's probative value outweighed its prejudice. It should have been admitted under N.J.R.E. 404(b); logically, there would have been no basis to exclude it under the less demanding prejudice-probativeness

balancing under N.J.R.E. 403; and defendant suggests no other basis to exclude the statement under N.J.R.E. 403.[9]

III.

We need not comment at length on defendant's argument that his custodial statement should have been excluded because Spanish-speaking police officers, instead of impartial interpreters, conducted the interrogation. Police presented defendant with Spanish-language <u>Miranda</u> forms. They reviewed the forms aloud with defendant in his language. And, defendant expressed his willingness to speak to police on two occasions. The court found defendant "was provided adequate interpretation," and was "fully cooperative and responsive." Viewing the totality of the circumstances, the court concluded, beyond a reasonable doubt, that defendant waived his rights voluntarily, knowingly, and intelligently. We defer to that finding, as it was

---

[9] We recognize that the court did not provide the required instruction on the limited use of Rule 404(b) evidence. <u>See</u> <u>Rose</u> 206 N.J. at 161 (discussing required limiting instruction); <u>Cofield</u>, 127 N.J. at 340-41 (same). As defendant has not raised that issue, even as a matter of plain error (since the sole ground for exclusion argued on appeal is N.J.R.E. 403), we shall not reach the issue, particularly since the failure to give the required instruction does not always warrant reversal. <u>See e.g.</u>, <u>State v. Loftin</u>, 146 N.J. 295, 394-95 (1996) (declining to reverse based on omission of limiting instruction); <u>State v. Hunt</u>, 115 N.J. 330, 364 (1989) (finding no plain error from failure to deliver instruction in view of overwhelming proof of guilt); <u>Schubert</u>, 235 N.J. Super. at 224 (declining to find plain error, where the trial court failed to deliver an unrequested Rule 404(b) curative instruction); <u>State v. Rajnai</u>, 132 N.J. Super. 530, 537-38 (App. Div. 1975).

supported by sufficient credible evidence.  See State v. S.S., 229 N.J. 360, 374 (2017).  The court applied the appropriate legal standard and standard of proof.  See State v. Bey, 112 N.J. 123, 134 (1988).  And, defendant has pointed to no misunderstanding, based on the officers' language skills, affecting defendant's waiver.  See State v. A.M., 237 N.J. 384, 399 (2019) (rejecting argument that waiver was not voluntary or knowing, absent evidence that defendant misunderstood officers who conducted the interrogation in Spanish).  To the extent not addressed, defendant's remaining points lack sufficient merit to warrant discussion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION