JUSTICE SOLOMON delivered the opinion of the Court.
**77 This case comes to us on interlocutory appeal from the trial court's determination, affirmed by the Appellate Division, that the State could not present evidence of defendant Carlos B. Green's two prior driving while intoxicated (DWI) convictions in this current prosecution for vehicular homicide while intoxicated. The State sought to introduce the prior convictions as state of mind evidence -- evidence that defendant acted recklessly by "consciously disregard[ing the] substantial and unjustifiable risk" of causing harm by driving while intoxicated. See N.J.S.A. 2C:2-2(b)(3). We conclude that the trial court did not abuse its discretion in excluding defendant's two prior DWI convictions here. Although we impose no per se exclusion of prior DWI convictions in a prosecution for vehicular homicide while intoxicated, this case does not present the rare circumstances that would render their admission appropriate.
I.
On a late December night in 2014, defendant Carlos B. Green (Green) struck and killed Billy Ray Dudley (Dudley), who was lying in the road. A toxicology lab determined Green's blood alcohol concentration (BAC) to be 0.210% at the time of the accident. Pursuant to N.J.S.A. 39:4-50, a person who operates a motor vehicle with a BAC of 0.08% or more is guilty of driving while intoxicated.
**78 Green had two prior DWI convictions in 1998 and 2009, for which his sentences each required completion of an educational course at the Intoxicated Driving Resource Center (IDRC). The IDRC conducts a post-conviction intervention program for those convicted of an alcohol or drug-related traffic offense. The program is designed to educate participants about alcohol and its effects on motor vehicle safety. At the IDRC, participants attend a series of educational *1140 sessions and discussions in order to successfully complete the course.
As a result of Dudley's death, Green was charged in a grand jury indictment with first-degree vehicular homicide while intoxicated and within 1,000 feet of a school, contrary to N.J.S.A. 2C:11-5(b)(3)(a). Before trial, the State moved in limine to introduce Green's two prior DWI convictions, which the State argued were relevant to the issue of recklessness. According to the State, the prior convictions demonstrated that Green "had knowledge of the substantial and unjustifiable risks associated with driving while intoxicated."
The trial court denied the State's motion. Applying the factors established by this Court in State v. Cofield, 127 N.J. 328, 338, 605 A.2d 230 (1992), the trial judge ruled that the evidence was unduly prejudicial because a jury might use the prior convictions as evidence that Green acted in conformity with that behavior in this instance. Quoting United States v. Rutherford, 54 F.3d 370, 376 (7th Cir. 1995), the court noted that "[a]ny drunk driver who takes to the road should know he runs a risk of injuring another person." The court also ruled that the evidence was cumulative because the State had a toxicology report indicating that Green had a BAC of 0.210% at the time of the incident. Therefore, the State did not need to rely on defendant's prior convictions to establish recklessness.
The Appellate Division granted the State's motion for leave to file an interlocutory appeal. On appeal, the State primarily relied on State v. Bakka, 176 N.J. 533, 826 A.2d 604 (2003), for the proposition that prior unsafe conduct, like driving while intoxicated, can be highly probative of recklessness. The State also cited **79 decisions from other jurisdictions that admit evidence of prior DWI convictions to establish recklessness. Finally, the State argued that because Green was instructed at the IDRC about the dangers of driving while intoxicated, evidence of his convictions would tend to prove his awareness and conscious disregard of the risks of driving while intoxicated when he chose to drink and drive again.
In response, Green argued that the motion judge correctly applied the Cofield factors to exclude his prior convictions, which were too remote and unduly prejudicial. Green stressed that other than his intoxication, there was no indication that he was operating his vehicle recklessly -- Green was not swerving or speeding, he had his lights on, and Dudley was lying in the roadway in the dark. Finally, Green contended that the State could prove his intoxication with less inflammatory evidence, such as the toxicology results and police testimony.
The Appellate Division affirmed the trial court, citing this Court's acknowledgment that "[d]riving while intoxicated may alone satisfy the recklessness required by the death by auto statute." State v. Green, 452 N.J. Super. 323, 325-26, 173 A.3d 1093 (App. Div. 2017) (quoting State v. Jamerson, 153 N.J. 318, 335, 708 A.2d 1183 (1998) ). The panel found that Cofield requires trial courts to "engage in a 'careful and pragmatic evaluation' that focuses on 'the specific context in which [other-crimes] evidence is offered' " to determine admissibility. Id. at 326-27, 173 A.3d 1093 (quoting State v. Stevens, 115 N.J. 289, 303, 558 A.2d 833 (1989) ). Applying the Cofield factors, the panel concluded that the trial judge did not abuse his discretion in excluding Green's two prior DWI convictions. Id. at 328-29, 173 A.3d 1093.
The State sought leave to appeal, which we granted. 232 N.J. 97, 178 A.3d 67 (2018). We also granted amicus curiae status to the New Jersey Attorney General.
*1141 II.
The parties' arguments here mirror those raised in the Appellate Division. In addition, the State urges this Court to join those **80 jurisdictions that admit evidence of prior bad acts for the purpose of establishing knowledge, malice, or another state of mind. The State argues that this Court should therefore hold that Green's prior DWI convictions are admissible for the limited purpose of establishing his knowledge and recklessness. The State also contends that there is no reason to believe that the jury would use this evidence for an improper purpose, particularly because trial courts can alleviate any prejudicial effect by giving a limiting instruction.
The Attorney General's arguments largely echo the arguments set forth by the State. Additionally, the Attorney General asks this Court to revisit Cofield's Rule 404(b) analysis, arguing that the Cofield Court intended to "simply incorporate" Rule 403 into the other-crimes test. According to the Attorney General, the fourth prong has "somehow morphed" into a more stringent Rule 404(b) analysis. The Attorney General thus urges this Court to reevaluate the "dramatic shifting" of Cofield's fourth prong, particularly because this shift occurred "without the issue being litigated."
Green asks this Court to "reject the State's invitation to follow other jurisdictions with less-protective rules of evidence." Green also argues that the State's reliance on Bakka is misplaced, as the defendant in Bakka drove with a suspended license and was charged with aggravated manslaughter, which requires proof of a higher level of recklessness than does vehicular homicide. Green further contends that even if Bakka is applicable, the trial court and Appellate Division decisions were entirely consistent with Bakka's mandate to apply the Cofield factors on a case-by-case basis.
III.
A.
We begin our discussion by acknowledging that the admissibility of evidence at trial is left to "the sound discretion of **81 the trial court." State v. Willis, 225 N.J. 85, 96, 137 A.3d 452 (2016). A trial court's evidentiary ruling is therefore reviewed on appeal for abuse of discretion. State v. Rose, 206 N.J. 141, 157, 19 A.3d 985 (2011). In addition, sensitive admissibility rulings regarding other-crimes evidence made pursuant to Rule 404(b) are reversed "[o]nly where there is a clear error of judgment." Id. at 157-58, 19 A.3d 985 (alteration in original) (quoting State v. Barden, 195 N.J. 375, 391, 949 A.2d 820 (2008) ). However, that deferential approach is inappropriate when the trial court failed to properly apply Rule 404(b) to the evidence at trial. Id. at 158, 19 A.3d 985. When that occurs, "an appellate court may engage in its own 'plenary review' to determine ... admissibility." Ibid. (quoting Barden, 195 N.J. at 391, 949 A.2d 820 ). In other words, appellate review is de novo when the court should have, but did not perform a Cofield analysis. State v. Reddish, 181 N.J. 553, 609, 859 A.2d 1173 (2004).
B.
This appeal focuses on the admission of other-crimes evidence -- specifically, Green's two prior DWI convictions and evidence of his subsequent participation in IDRC courses. Rule 404(b) bars "evidence of other crimes, wrongs, or acts" when used "to show that [a] person acted in conformity therewith." N.J.R.E. 404(b). However, evidence of prior "crimes, wrongs, or acts" may be used to show *1142 "intent, ... knowledge, ... or absence of mistake or accident." Id. Because evidence of a defendant's other crimes "has a unique tendency" to prejudice the jury, Reddish, 181 N.J. at 608, 859 A.2d 1173 (quoting Stevens, 115 N.J. at 302, 558 A.2d 833 ), other-crimes evidence proffered under Rule 404(b)"must pass [a] rigorous test," State v. Garrison, 228 N.J. 182, 194, 155 A.3d 996 (2017) (alteration in original) (quoting State v. Kemp, 195 N.J. 136, 159, 948 A.2d 636 (2008) ).
In Cofield, we adopted a four-part test to determine the admissibility of other-crimes evidence:
**82 (1) The evidence of the other crime must be admissible as relevant to a material issue;
(2) It must be similar in kind and reasonably close in time to the offense charged;
(3) The evidence of the other crime must be clear and convincing; and
(4) The probative value of the evidence must not be outweighed by its apparent prejudice.
[ 127 N.J. at 338, 605 A.2d 230.]
Trial courts must apply that test on a case-by-case basis "in order to avoid the over-use of extrinsic evidence of other crimes or wrongs." Ibid. The four-part Cofield test governing the admissibility of other-crimes evidence is a well-settled feature of New Jersey's evidence jurisprudence.
1.
To satisfy the first prong of the Cofield test, the "proffered evidence must be 'relevant to a material issue genuinely in dispute.' " State v. Gillispie, 208 N.J. 59, 86, 26 A.3d 397 (2011) (quoting State v. Darby, 174 N.J. 509, 519, 809 A.2d 138 (2002) ). Rule 401 defines relevant evidence as any evidence that has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." Darby, 174 N.J. at 519, 809 A.2d 138 (quoting N.J.R.E. 401). In determining relevance, "the inquiry should focus on 'the logical connection between the proffered evidence and a fact in issue.' " Ibid. (quoting State v. Hutchins, 241 N.J. Super. 353, 358, 575 A.2d 35 (App. Div. 1990) ). The required logical connection has been satisfied "if the evidence makes a desired inference more probable than it would be if the evidence were not admitted." Garrison, 228 N.J. at 195, 155 A.3d 996 (quoting State v. Williams, 190 N.J. 114, 123, 919 A.2d 90 (2007) ).
Here, as a result of his DWI convictions, Green was required to take courses at the IDRC, where he learned of the dangers of driving while intoxicated. As such, the proffered evidence supports the State's contention that Green knew of and consciously disregarded the risks of driving while intoxicated. Thus, Green's previous DWI convictions and compulsory IDRC
**83 participation were relevant to a material issue at trial, namely Green's recklessness.
2.
The second prong requires that the "other acts" be "similar in kind and reasonably close in time to the offense charged." Cofield, 127 N.J. at 338, 605 A.2d 230. Application of this prong is "limited to cases that replicate the circumstances in Cofield." Williams, 190 N.J. at 131, 919 A.2d 90. Although relevant in Cofield, this Court has recognized that similarity and temporality are not applicable in every case. Rose, 206 N.J. at 163, 19 A.3d 985. As a result, Cofield's second prong may be eliminated where it "serves no beneficial purpose."
*1143 Williams, 190 N.J. at 131, 919 A.2d 90. We find that to be the case here.
3.
Under the third Cofield prong, the prosecution must establish that the other crime "actually happened by 'clear and convincing' evidence." Rose, 206 N.J. at 160, 19 A.3d 985 (quoting Cofield, 127 N.J. at 338, 605 A.2d 230 ). Here, the State offered judgments of conviction as evidence of Green's prior DWI's. Therefore, the evidence satisfies Cofield's third prong.
4.
"Because of the damaging nature of [other crimes] evidence," the fourth Cofield prong -- "[t]he probative value of the evidence must not be outweighed by its apparent prejudice," 127 N.J. at 338, 605 A.2d 230 -- is "the most difficult to overcome." Rose, 206 N.J. at 160, 19 A.3d 985 (citing Barden, 195 N.J. at 389, 949 A.2d 820 ). That prong requires an inquiry distinct from the familiar balancing required under N.J.R.E. 403 : the trial court must determine only whether the probative value of such evidence is outweighed by its potential for undue prejudice, Barden, 195 N.J. at 389, 949 A.2d 820, not whether it is substantially outweighed **84 by that potential as in the application of Rule 403.[1] "[I]f other less prejudicial evidence may be presented to establish the same issue, the balance in the weighing process will tip in favor of exclusion." Rose, 206 N.J. at 161, 19 A.3d 985 (quoting Barden, 195 N.J. at 392, 949 A.2d 820 ). Therefore, Rule 404(b) is viewed "as a rule of exclusion rather than a rule of inclusion." Reddish, 181 N.J. at 609, 859 A.2d 1173 (quoting Darby, 174 N.J. at 520, 809 A.2d 138 ). Nevertheless, some types of evidence, such as evidence of motive or intent, "require a very strong showing of prejudice to justify exclusion." Garrison, 228 N.J. at 197, 155 A.3d 996 (quoting State v. Skinner, 218 N.J. 496, 516, 95 A.3d 236 (2014) ).
To reduce "the inherent prejudice in the admission of other-crimes evidence," trial courts are required "to sanitize the evidence when appropriate," Rose, 206 N.J. at 161, 19 A.3d 985 (quoting Barden, 195 N.J. at 390, 949 A.2d 820 ), by allowing the introduction of only the degree and date of the offense, State v. Brunson, 132 N.J. 377, 391, 625 A.2d 1085 (1993).[2] To further minimize the inherent prejudice in the admission of other-crimes evidence, a carefully crafted limiting instruction "must be provided to inform the jury of the purposes for which it may, and for which it may not, consider the evidence of defendant's [other crimes], both when the evidence is first presented and again as part of the final jury charge." Rose, 206 N.J. at 161, 19 A.3d 985 (citing Barden, 195 N.J. at 390, 949 A.2d 820 ). However, the inherently prejudicial nature of other-crimes evidence "casts doubt on a jury's ability to follow even the most precise limiting instruction."
**85 Reddish, 181 N.J. at 611, 859 A.2d 1173 (quoting State v. Fortin, 162 N.J. 517, 534, 745 A.2d 509 (2000) ).
The crux of this case is Cofield's fourth prong. Green's two prior DWI convictions *1144 and subsequent IDRC participation are probative of his mental state when he committed the charged vehicular homicide. Specifically, Green had twice been through the criminal justice process and therefore was unquestionably aware that driving while intoxicated is an impermissible and punishable offense. As a result of his convictions, Green was sentenced to attend courses at the IDRC where he learned of the risks and dangers of driving while intoxicated. Green's IDRC participation likely gave him a heightened awareness of those risks and dangers. Therefore, the other-crimes evidence tends to show that Green was aware of, but consciously disregarded, the risks of driving while intoxicated, a mental state that is a material element of vehicular homicide.
Nevertheless, other considerations diminish the probative value of the evidence at issue. For example, Green's prior DWI convictions were from 1998 and 2009 -- many years before this fatal accident. The lapse of time has an eroding effect on the instructive impact of the DWI convictions and ensuing attendance at the IDRC.
Turning to prejudice, admission of the prior DWI convictions suggests to the jury that Green acted in conformity with his prior behavior. The circumstances surrounding this vehicular homicide prosecution indicate that, although intoxicated, Green was not speeding, swerving, or otherwise committing any traffic infractions. Therefore, the motion court could reasonably conclude that admission of Green's prior DWI convictions would confuse or risk misleading the jury, causing it to convict Green based solely on his propensity to drive while intoxicated.
The potential for jury confusion is especially high when, as here, proof of causation is tenuous. While Green was indeed intoxicated on the night of the accident, Dudley was lying in the middle of a **86 dark roadway when he was struck by Green's vehicle. Even with the most carefully crafted limiting instruction, admission of Green's two prior DWI convictions could result in the jury's conflating recklessness and causation.
Additionally, the State possesses a less inflammatory source of probative evidence -- Green's BAC of 0.210% at the time of the incident. "Proof that the defendant was driving while intoxicated ... shall give rise to an inference that the defendant was driving recklessly." N.J.S.A. 2C:11-5(a). In the drunk driving context, "[i]ntoxication in combination with other evidence or standing alone may satisfy the recklessness element." State v. Stanton, 176 N.J. 75, 84, 820 A.2d 637 (2003). Although N.J.S.A. 2C:11-5(a) does not mandate that the jury accept the inference of recklessness, the jury may infer recklessness based solely on Green's BAC. Therefore, the State has at its disposal probative and far less inflammatory evidence of Green's reckless state of mind.
In light of the circumstances present in this case, the risk that a jury would convict Green based on his propensity to drive while intoxicated outweighs the probative value of his more than five-year-old DWI convictions. Therefore, balancing the probative value against the prejudice of admitting defendant's prior DWI convictions and IDRC program participation under Rule 404(b) favors exclusion of the evidence.
IV.
Our independent analysis leads to the conclusion that Green's prior DWI convictions are inadmissible under Rule 404(b). In that respect, we affirm the judgment of the Appellate Division.
We acknowledge that the State, relying on Bakka, urges a different conclusion. In *1145 Bakka, the defendant crashed his girlfriend's car while intoxicated, killing a passenger. 176 N.J. at 539, 826 A.2d 604. Prior to trial, the court granted the State's motion in limine, allowing it to introduce evidence that the defendant was **87 driving with a revoked license at the time of the accident. Id. at 543, 826 A.2d 604. The jury thereafter convicted the defendant of first-degree aggravated manslaughter and second-degree vehicular homicide. Ibid. The Appellate Division found that the trial court improperly admitted the evidence of revocation and vacated the defendant's convictions. Id. at 544, 826 A.2d 604.
This Court agreed with the Appellate Division that the "mere fact that a defendant is an unlicensed driver does not by itself suggest an awareness of risk." Id. at 546, 826 A.2d 604. We thus agreed that its admission was error but concluded that the error was harmless under the circumstances of that case and reinstated the defendant's convictions. Id. at 550-51, 826 A.2d 604.
Although we found error, we acknowledged that "the reasons for that revocation may be probative of recklessness when defendant again engages in unsafe conduct identical or similar to that which resulted in the revocation." Id. at 547, 826 A.2d 604. In other words, the "revocation may serve as an additional 'warning' to the defendant of the risks to others when the proscribed conduct is repeated and therefore may be probative of recklessness." Ibid.
Likewise, we hold here that the trial court and Appellate Division were correct to exclude defendant's prior DWI convictions. However, as we did in the circumstances of Bakka, we recognize that there may be a situation in which prior DWI convictions of a defendant charged with vehicular homicide while intoxicated would be admissible under Rule 404(b) as evidence of recklessness, despite the statutory inference of recklessness arising from evidence that the defendant drove with a BAC over 0.08%. The probative value of prior DWI convictions close in time to the incident charged may, only in the rare case, outweigh the potential for undue prejudice. We therefore encourage trial judges to perform a thorough Cofield analysis and not presume a per se exclusion of such evidence. The admissibility of Rule 404(b) evidence must be considered on a case-by-case basis by analyzing the **88 evidence proffered and the circumstances of the case. See Bakka, 176 N.J. at 547, 826 A.2d 604.
V.
For the reasons set forth above, we affirm the judgment of the Appellate Division.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.

The State and the Attorney General cite to authority from other federal and state jurisdictions and ask us to adopt a less stringent standard for analyzing Cofield's fourth prong. We decline the invitation to alter New Jersey's well-settled jurisprudence in this regard.

Brunson modified this Court's decision in State v. Sands, 76 N.J. 127, 144, 386 A.2d 378 (1978), in which we held that the admissibility of a prior conviction to impeach the credibility of a testifying criminal defendant is a decision that rests within the sound discretion of the trial judge.