**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1234-24
A-1779-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

RAHMEL BELLE,

    Defendant-Respondent.

---

Argued May 7, 2025 – Decided August 7, 2025

Before Judges Currier, Marczyk, and Torregrossa-O'Connor.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-08-0102 (A-1234-24) and Hudson County, Indictment No. 23-02-0225 (A-1779-24).

Heather C. Hausleben, Deputy Attorney General, argued the cause for appellant in A-1234-24 (Matthew J. Platkin, Attorney General, attorney; Claudia Joy Demitro, Assistant Attorney General, of counsel and on the briefs).

Colleen Kristan Signorelli, Assistant Prosecutor, argued the cause for appellant in A-1779-24 (Esther Suarez, Hudson County Prosecutor, attorney; Colleen Kristan Signorelli, on the brief).

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for respondent in A-1234-24 (Jennifer N. Sellitti, Public Defender, attorney; Scott M. Welfel, of counsel and on the brief).

David Cory Altman, Assistant Deputy Public Defender, argued the cause for respondent in A-1779-24 (Jennifer N. Sellitti, Public Defender, attorney; David Cory Altman, of counsel and on the brief).

PER CURIAM

On leave granted, we calendared these matters back-to-back to consider appeals from several orders issued in two different counties. The State appeals from the Union County order dated December 17, 2024, denying its motion to reconsider a prior order denying joinder of criminal cases pending against defendant in Union and Hudson Counties. The State also appeals from the January 24, 2025 Hudson County order finding the doctrine of collateral estoppel did not preclude defendant from moving to suppress evidence in his Hudson County case despite the Union County court's denying a motion to suppress similar evidence involving the same defendant. We granted leave to appeal in separate orders solely to address the joinder and collateral estoppel issues. Accordingly, we confine our discussion to those issues. After reviewing

2

the State's contentions in light of the record and applicable principles of law, we affirm both orders.

I.

A.

HUDSON COUNTY ROBBERY

On April 20, 2022, at 10:40 p.m., members of the Jersey City Police Department (JCPD) responded to a parking lot upon a report of a motor vehicle theft. The parking lot attendant told the officers two black males and one Hispanic male entered the parking lot at 10:37 p.m. As the three males approached the attendant, one pulled out a handgun and ordered the attendant into a booth where he was forced to the ground, and his cell phone and wallet were taken from him. Meanwhile, the other two individuals entered another booth and took cash from the register and three sets of car keys. Shortly thereafter, the man holding the attendant at gunpoint left the booth and entered the passenger side of a yellow BMW M4, which then fled the area. A subsequent investigation revealed a second car, a black 2018 Audi Q5, was also stolen. The entire incident lasted approximately two minutes and neither car was immediately recovered.

A-1234-24

The events were captured on video surveillance. One of the suspects wore a glossy dark-colored bubble jacket, dark-colored hoodie, and dark-colored pants with white stripes down the side. Another suspect had a bubble jacket with a hoodie and ripped pants. The third suspect wore a dark jacket and pants.

After the April 20 events were broadcast over the police radio, Detective Jeison Martinez of the JCPD monitored public Instagram accounts. He viewed defendant's Instagram account, on which was posted a story (a temporary video) of a BMW M4 being driven at high speed.

UNION COUNTY CARJACKING

On April 23, 2022, at approximately 7:33 p.m., Michael Salas and Angie Toro parked their red Mercedes-Benz E350 (Mercedes) in front of a restaurant in Elizabeth. While in the car, a black Audi Q5 (Audi) pulled up and blocked in the Mercedes. Two males wearing masks and hoods exited the Audi and ordered Salas and Toro out of the Mercedes at gunpoint. The suspects demanded the victims' car, cell phones, and other belongings, and the victims handed over two cell phones and at least $1,500 in cash. One suspect got into the driver's seat of the Mercedes while the other suspect got back into the Audi, and both cars drove off. The victims called 9-1-1, and Elizabeth police responded to the scene.

A-1234-24

A multi-jurisdictional investigation ensued. At approximately 10:00 p.m., JCPD Officers Joaquin Rodriguez and G. Moreano were on duty when a "be on the lookout" (BOLO) was issued for the red Mercedes which had just entered Jersey City. The BOLO identified the Mercedes as having been involved in a carjacking in Elizabeth and further noted the occupants were considered armed and dangerous.

A police helicopter observed the Mercedes multiple times, and at approximately 10:38 p.m., dispatch radioed the vehicle was abandoned in Jersey City at the intersection of Bramhall Avenue and Pine Street. Officer Rodriguez responded to the area to search for the vehicle's occupants. While traveling toward Pine Street, Officer Rodriguez observed a male, later identified as defendant, wearing a black hoodie, black sweatpants, and a ski mask. Defendant was holding the right side of his waistband while jogging away from the area where the Mercedes was located, and thus Officer Rodriguez believed defendant was armed.

According to Officer Rodriguez, defendant turned and looked directly at the police vehicle and began running away. As officers activated their emergency lights, defendant attempted to jump a fence, but Officer Moreano

grabbed his leg. During the scuffle, Officer Moreano observed a handgun in defendant's waistband. Defendant was able to break free and continue running.

Officers subsequently found defendant hiding under a car and arrested him. Defendant was searched incident to his arrest and was found in possession of a Mercedes key fob and $1,744 in cash. Another officer recovered an HK 9mm handgun in a backyard of a nearby home that was on defendant's flight path from the officers. The handgun was gray, equipped with a large capacity magazine and a green laser attachment, matching the description of the handgun provided by the victims of the carjacking.

Later that day, JCPD officers were notified that the Audi stolen on April 20 was used in the Mercedes carjacking. After defendant was apprehended and the Mercedes recovered, officers saw a jacket inside the abandoned Mercedes, which the State asserts matched the description of the jacket worn by one of the individuals who stole the BMW and Audi on April 20.

Defense counsel in the Hudson case adopted this statement of facts except to assert defendant was not associated with the stolen Mercedes observed in the vicinity of his stop on April 23; he did not look directly at the officers before proceeding away from them; the officers lacked sufficient observations or

6

reason to believe that he was armed or involved in the alleged carjacking; and the officers lacked probable cause to seize and search him.

B.

After securing a warrant for defendant's phone, the State found photographs of the gun, an Audi, and video of the Mercedes on the phone. In addition to the photo of the Audi, allegedly used in the carjacking, was a screenshot of the digital owner's manual for a 2018 Audi Q5 and a video showing an individual wearing gray sweatpants and what appear to be red and black shoes driving an Audi.

In the early morning hours of April 21, defendant uploaded two photographs of a black Audi Q5 to his Instagram account,[1] sending them to another Instagram user while discussing selling the Audi.[2] Two hours after the carjacking incident on April 23, defendant uploaded videos to his Instagram account filmed within the carjacked Mercedes. Also on April 23, a story posted on defendant's Instagram account shows defendant purportedly wearing the same red and black Nike shoes he had on when arrested later that day and that

---

[1]  These photos do not show a license plate.

[2]  Subsequently, in the direct messaging exchange with this Instagram user, defendant also tried to sell the Mercedes to the user.

he appeared to wear in video taken from a light rail train station shortly before the April 20 armed robbery. Other Instagram stories and posts show the same gray handgun with a green laser attachment and the last four digits of the serial number of the gun.

A yellow BMW M4 also appears on defendant's Instagram account, first appearing on April 20 at approximately 11:00 p.m. Defendant then posted additional stories of a BMW later that night and again two nights later. On the morning of the April 23 carjacking, defendant posted a video on Instagram showing the BMW M4 doing donuts in the parking lot. These videos were also found in defendant's cell phone.

## C.

In August 2022, defendant was indicted in Union County, stemming from the April 23 carjacking, and charged with: second-degree conspiracy to carjack, N.J.S.A. 2C:5-2; first-degree carjacking, N.J.S.A. 2C:15-2(a); two counts of first-degree robbery, N.J.S.A. 2C:15-1(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(a)(1); two counts of fourth-degree prohibited weapons and devices, N.J.S.A. 2C:39-3(f); second-degree eluding, N.J.S.A. 2C:29-2(b); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a); third-

8

degree resisting arrest, N.J.S.A. 2C:29-2(a); fourth-degree aggravated assault on a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a); and fourth-degree receiving stolen property, N.J.S.A. 2C:20-7.

In February 2023, defendant was indicted for the April 20, 2022 Hudson County parking garage robbery and charged with: first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2); first-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2(a)(1); second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); and second-degree possession of a firearm with an unlawful purpose, N.J.S.A. 2C:39-4(a)(1).

In August 2024—two years after the Union County indictment—the State moved for joinder in Union County and alternatively sought to admit evidence regarding the Hudson County robbery at trial of the Union County matter. The Union County court rendered an oral decision denying the motion for joinder and limiting the other-crime evidence from the Hudson robbery that could be utilized at trial. The court denied the State's motion to allow the introduction of the armed robbery and theft of the Audi. It permitted the State to admit evidence of photos and videos from defendant's phone, provided there was no reference to the theft of the Audi. The court also allowed the State to admit photos of

9

defendant holding a gun. It issued an order on October 28, 2024, memorializing its decision.

In November 2024, the State moved for reconsideration and offered an alternative way for the judge to admit sanitized evidence. The court heard argument and denied the motion on the record on December 13, issuing an order on December 17. It found the evidence could not be sanitized without unduly prejudicing defendant. We subsequently granted the State's motion for leave to appeal challenging the court's order.

In October 2023, defendant moved to suppress evidence of the handgun in his Union County case. In May 2024, the Union County court denied the motion.

In October 2024, defendant moved to suppress similar evidence in the Hudson County case. The State opposed the motion, arguing defendant was barred from moving to suppress in Hudson County based on the doctrine of collateral estoppel. The State argued defendant should be estopped because he already litigated the warrantless seizure of the handgun in Union County and lost on the merits.

A-1234-24

On January 24, 2025, the Hudson County court rejected the State's collateral estoppel arguments and scheduled a hearing for the motion to suppress.  We subsequently granted the State leave to appeal.

## II.

The State raises the following points on appeal:

POINT I         [Union County]

THE TRIAL COURT ERRONEOUSLY DENIED THE STATE'S MOTION FOR JOINDER AND TO ADMIT CERTAIN OTHER CRIME EVIDENCE.

POINT I         [Hudson County]

THE MOTION COURT ERRED BY DENYING THE STATE'S MOTION FOR COLLATERAL ESTOPPEL BECAUSE DEFENDANT HAS ALREADY FULLY AND FAIRLY LITIGATED THE SUPPRESSION MOTION IN UNION COUNTY, THE ISSUES IN BOTH MOTIONS INVOLVED THE CONSTITUTIONALITY OF THE SEIZURE OF EVIDENCE FOLLOWING DEFENDANT'S ARREST, AND THE COURT RENDERED AN ORDER AND OPINION ON THE MERITS.

A. The Motion Court Erred When It Found the Issues in Both Motions to Suppress Are Not Identical.

B. The Motion Court Erred When It Determined the Union County Order Does Not Satisfy the Finality Requirement Under the Doctrine of Collateral Estoppel.

11

C.    The Court's Reliance on the Doctrine of Fundamental Fairness Is Misplaced Because Defendant Has Already Fully and Fairly Litigated the Motion to Suppress in Union County.

A.

We begin by considering the Union County order denying joinder. The State argues the Union County court erred in finding the April 20 robbery and April 23 carjacking were "not similar in kind and close in time." It argues these events constitute "one continuing course of conduct, and the unique nature of the Audi and the yellow BMW . . . stolen just three days prior is what identifies defendant where identity is a central issue." It further contends the trial court failed to appreciate the similar nature of the crimes, given both cases involved masked men, a handgun, and stolen luxury vehicles. The State also points to defendant posting pictures of the Audi and BMW on his Instagram account, as well as of the Mercedes three days later, and his attempts to sell the Mercedes and the Audi through Instagram.

The State argues it should be permitted to show defendant was one of the masked carjackers on April 23 by admitting evidence that he stole the Audi getaway car three days earlier. It argues that if evidence regarding the April 20 robbery, particularly the Instagram posts and photos retrieved from defendant's

12

phone is not admitted, the jury will suspect the Audi's actual owner committed the crime. It contends the court overlooked the evidence of the BMW and the sneakers worn by the suspect in both incidents, as well as the jacket found in the Mercedes, which "links the identity of defendant to both crimes."

Defendant counters the Union County court correctly analyzed the evidence under N.J.R.E. 404(b) and denied the State's motion for joinder. He asserts the court did not err in finding the State had failed to present clear and convincing evidence that he committed the April 20 robbery. He further asserts the court properly found the timing of the State's motion—just two months before his trial in Union—was prejudicial.

Defendant further submits the court did not overlook any evidence, as the court considered the jacket found in the Mercedes on April 23 and whether it matched the description of clothing worn by a suspect in the April 20 robbery, but the court found such evidence unpersuasive. Moreover, he notes that even if he argues the photo of the Audi on his phone was not the Audi identified by the April 23 carjacking victims, this "does nothing to erase the very strong evidence connecting" him to the carjacking of the Mercedes. He further acknowledges that if he elected to suggest to the jury that the actual owner of

13

the Audi is a suspect who should have been investigated, he would open the door to the State's introducing evidence from the April 20 robbery.

A trial court's decision to join offenses is discretionary and "entitled to great deference on appeal." State v. Brown, 118 N.J. 595, 603 (1990). "[T]he admissibility of evidence at trial is left to 'the sound discretion of the trial court.'" State v. Green, 236 N.J. 71, 80-81 (2018) (quoting State v. Willis, 225 N.J. 85, 96 (2016)). Thus, "[a] trial court's evidentiary ruling is . . . reviewed on appeal for abuse of discretion." Id. at 81.

Furthermore, "sensitive admissibility rulings regarding other-crimes evidence made pursuant to Rule 404(b) are reversed '[o]nly where there is a clear error of judgment.'" Ibid. (alteration in original) (quoting State v. Rose, 206 N.J. 141, 157-58 (2011)). This court only reverses such a decision "if it constitutes an abuse of discretion." State v. Weaver, 219 N.J. 131, 149 (2014).

Joinder of "similar or related offenses" is preferred "[i]n the interests of [judicial] economy and efficiency." State v. Coleman, 46 N.J. 16, 24 (1965). A trial court may order discretionary joinder of two or more indictments for trial "if the offenses . . . could have been joined in a single indictment." R. 3:15-1(a). Two or more offenses may be joined in a single indictment "if the offenses charged are of the same or similar character or are based on the same act or

14

transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan." R. 3:7-6. "Charges do not have to be identical to qualify as similar for joinder," as it is "permitted if there is a connection between the charges so that evidence in one charge would be probative of another. In the absence of prejudice, joinder is favored." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 3:7-6.

"Although joinder is favored, economy and efficiency interests do not override a defendant's right to a fair trial." State v. Sterling, 215 N.J. 65, 72 (2013). "Notwithstanding the preference for joinder, Rule 3:15-2(b) vests a trial court with discretion to order separate trials if joinder would prejudice unfairly a defendant." State v. Chenique-Puey, 145 N.J. 334, 341 (1996). Our Supreme Court has explained:

> the inquiry only begins with an assessment of whether there is similarity or a connection between charges because one involves evidence probative of another charge. Even if that threshold standard is satisfied, the court remains obligated to assess for prejudice, which may require the granting of relief from joinder. For that, the test employed under N.J.R.E. 404(b) provides the appropriate analytical framework.
>
> [Sterling, 215 N.J. at 92.]

These rules are designed to address the inherent

A-1234-24

danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all.

[State v. Pitts, 116 N.J. 580, 601 (1989) (quoting United States v. Lotsch, 102 F.2d 35, 36 (2d Cir. 1939)).]

In addition, there is a risk that juries may use evidence of another crime to conclude that a defendant has a criminal propensity. State v. P.S., 202 N.J. 232, 254-55 (2010). "The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is 'a "bad" person in general.'" State v. Cofield, 127 N.J. 328, 336 (1992) (quoting State v. Gibbons, 105 N.J. 67, 77 (1987)).

"The test for assessing prejudice is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [Rule 404(b)] in the trial of the remaining charges.'" Sterling, 215 N.J. at 73 (quoting Chenique-Puey, 145 N.J. at 341). "If the evidence would be admissible at both trials, then the trial court may consolidate the charges because 'a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" Chenique-Puey, 145 N.J. at 341 (quoting State v. Coruzzi, 189 N.J. Super. 273, 299 (App. Div. 1983)).

16

Rule 404(b)(1) bars "evidence of other crimes, wrongs, or acts . . . to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition."  However, such "evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute."  N.J.R.E. 404(b)(2).

The New Jersey Supreme Court has established four factors to weigh when deciding if crimes or evidence of bad acts are admissible under Rule 404(b):

> 1.    The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2.    It must be similar in kind and reasonably close in time to the offense charged;
>
> 3.    The evidence of the other crime must be clear and convincing; and
>
> 4.    The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Cofield, 127 N.J. at 338.]

Under the first prong, the "proffered evidence must be 'relevant to a material issue genuinely in dispute.'"  State v. Gillispie, 208 N.J. 59, 86 (2011) (quoting State v. Darby, 174 N.J. 509, 519 (2002)).  A relevancy "inquiry should focus on 'the logical connection between the proffered evidence and a fact in

17

issue.'" Darby, 174 N.J. at 519 (quoting State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990)). Such a logical connection is established "if the evidence makes a desired inference more probable than it would be if the evidence were not admitted." State v. Garrison, 228 N.J. 182, 195 (2017) (quoting State v. Williams, 190 N.J. 114, 123 (2007)).

As for the second prong, "[a]lthough relevant in Cofield, . . . similarity and temporality are not applicable in every case." Green, 236 N.J. at 83. As our Supreme Court explained:

> In Cofield, . . . the State sought to introduce evidence establishing the defendant's constructive possession of drugs during an illegal-drug street encounter that occurred subsequent to the drug incident that was the subject of the prosecution. . . . The State sought to admit that similar and close-in-time other-crimes evidence as relevant to prove the defendant's possession of drugs in the charged offense, an element that was hotly contested. . . . The test that the Court ultimately fashioned included an aspect that plainly addressed the specific drug evidence at issue in Cofield.
>
> The requirement set forth as prong two of Cofield, however, is not one that can be found in the language of [N.J.R.E.] 404(b). Cofield's second prong, therefore, need not receive universal application in Rule 404(b) disputes. Its usefulness as a requirement is limited to cases that replicate the circumstances in Cofield.
>
> [Williams, 190 N.J. at 131.]

The third prong requires the prosecution "establish that the other crime 'actually happened by clear and convincing evidence.'" Green, 236 N.J. at 83 (quoting Rose, 206 N.J. at 160). "[T]here must be some showing that the person against whom the evidence is being used actually committed the other crime or wrong." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 8.3 on N.J.R.E. 404 (2024-2025) (citing Burbridge v. Paschal, 239 N.J. Super. 139 (App. Div. 1990)).

The fourth prong is "the most difficult to overcome." Rose, 206 N.J. at 160. It "requires an inquiry distinct from the familiar balancing required under N.J.R.E. 403: the trial court must determine only whether the probative value of such evidence is outweighed by its potential for undue prejudice, . . . not whether it is substantially outweighed by that potential as in the application of Rule 403." Green, 236 N.J. at 83-84 (emphasis in original). "[I]f other less prejudicial evidence may be presented to establish the same issue, the balance in the weighing process will tip in favor of exclusion." Rose, 206 N.J. at 161 (quoting State v. Barden, 195 N.J. 375, 392 (2008)). "Therefore, Rule 404(b) is viewed 'as a rule of exclusion rather than a rule of inclusion.'" Green, 236 N.J. at 84 (quoting State v. Reddish, 181 N.J. 553, 609 (2004)). "[T]he inherently prejudicial nature of other-crime evidence 'casts doubt on a jury's ability to

follow even the most precise limiting instruction.'" Ibid. (quoting Reddish, 181 N.J. at 611).

The Union County court denied the State's motion to join the Hudson County matter with the Union County case for trial. Relying on Rule 3:7-6, the court noted it found the State's argument in favor of joinder unpersuasive. The court explained "the evidence . . . with respect to the carjacking [of the Mercedes was] . . . fairly strong." The court pointed to defendant's Instagram posts of the Mercedes shortly after the carjacking, his arrest near where the Mercedes was abandoned, the gun found nearby, discovery of the Mercedes key fob and cash on defendant's person, and the Google search for the batteries required for the gun's laser. The court found this evidence "significant" and "substantial."

Conversely, the court stated the evidence with respect to the armed robbery of the Audi and BMW did not "rise even close to that level." It explained that although there were some similarities between the armed robbery and the carjacking, there was "no suggestion" that the suspects in the armed robbery "were involved in the carjacking." Rather, the court noted "the State [was] attempting to bootstrap the . . . non-substantial evidence in the [Hudson robbery] case."

The court also found "it would prejudice" defendant to link the two cases regardless of when the motion to join had been filed, but even more so now that the Union County case was "steaming towards a trial in . . . the . . . very near future." It noted it would be prejudicial at this stage of the litigation to require defendant to also prepare to defend himself in Union County on the Hudson County charges.

The court noted the "only connection between [the April 23 carjacking] and the [April 20 armed robbery] charge is the Audi," and although the Audi "used in the carjacking [was] similar, [it was] never . . . specifically identified" in defendant's photos as the one stolen during the armed robbery. The court noted that "the model and the year [of the Audi] matched . . . the type of car . . . [defendant was] driving or at least it matche[d] the . . . owner's manual" in his Instagram photos; however, there was "nothing that connect[ed defendant] to the Audi itself other than those [Instagram] pictures without that defining information." The State confirmed that was "correct, . . . the license [plate] isn't shown. There's no indicator showing [the Audi in defendant's phone is] the exact" Audi used in the April 20 armed robbery. Thus, the court denied the State's motion for joinder.

21

In addressing the Rule 404(b) issue, the court proceeded to conduct a Cofield analysis and found the evidence of the armed robbery and theft of the Audi on April 20 was inadmissible. As to the first factor, the court found that "whether the Audi was stolen or not . . . [was] not relevant." The court went on to explain that because "[t]he idea that [defendant] . . . had possession and was driving an Audi similar to what was . . . used in the [April 23] carjacking [was] relevant," the "probative value [of the photos was] not outweighed by its prejudicial value," and therefore "the picture" of defendant driving an Audi between April 20 and April 23 could come in, "but not the connection to the . . . theft."

Under the second Cofield factor, the court found "the theft of [the] Audi [and the April 20 armed robbery were not] similar in kind to [the April 23] carjacking. They're separate charges. It wasn't as though [defendant] carjacked the Audi a day before. The allegation . . . is that he robbed the Audi at gunpoint three days earlier." Thus, the court found the two acts were not "reasonably close in time, nor . . . substantially the same charge."

Under the third Cofield requirement, the court noted this is where "it falls apart the most for the State," because the evidence was "certainly not . . . clear and convincing." Rather, admitting the evidence would result in "a trial within

22

a trial." As to the fourth factor under <u>Cofield</u>, the court found admitting evidence of "the theft of the Audi would be entirely prejudicial to the defendant and even the clearest . . . limiting instructing to a jury could not cure the . . . prejudice."

Accordingly, the court found the State was "precluded from introducing evidence of the Audi theft on April 20." The court permitted the State to introduce only pictures of the Audi taken by defendant between April 20 and April 23, "not the pictures of the [BMW] . . . because that would only be relevant if we were talking about" the April 20 armed robbery.

In light of the great deference we owe to the trial court in joinder decisions, we affirm substantially for the reasons set forth by the court. We discern no clear error of judgment by the court finding the State failed to present clear and convincing evidence of the prior crime. Likewise, we find no error in the court finding under prong four of <u>Cofield</u> that the probative value was outweighed by the prior crime's apparent prejudice, especially given this prong requires a lower showing of prejudice than a Rule 403 balancing test. Moreover, the court did not err in considering the prejudicial impact of the joinder at that late juncture. The Union County court did not misapply its discretion in denying the State's joinder motion.

B.

We turn to the Hudson County order.  The State asserts the Hudson County court erred by denying its motion to collaterally estop defendant from moving to suppress evidence in the Hudson County case because it involved identical issues to those raised in the Union County suppression motion.  It further contends the court erred when it held the Union County suppression order did not satisfy the finality requirements under the doctrine of collateral estoppel.  It also maintains the court mistakenly relied on the doctrine of fundamental fairness because defendant had the opportunity to fully and fairly litigate the suppression issue.

The State argues it is irrelevant that defendant is requesting the suppression of different evidence, as it has no bearing on the constitutionality of the officers' actions.  It further contends defendant waived any arguments regarding evidence not challenged in Union County, such as those regarding the officers' failing to activate body-worn cameras at the time of defendant's arrest, because under Rule 3:5-7, defendant was required to raise those issues in Union County, and he is not permitted to raise new arguments after a motion to suppress has been decided.  The State relies on State v. Witt, 223 N.J. 409, 418-19 (2015), and State v. Gora, 148 N.J. Super. 582, 592 (App. Div. 1977), to

support its arguments. Thus, the State asserts defendant "had the opportunity to fully and fairly litigate his motion to suppress relating to his April 23 . . . arrest" and consequently "already had his day in court."

Defendant principally argues the Union County suppression order was not a final judgment for the purpose of collateral estoppel. He also asserts the issues to be precluded are not identical because the scope of discovery provided in Hudson County was different than what was provided in Union County prior to the suppression hearing. He contends that while the issues are closely related, they involved a different universe of evidence and different legal theories. For instance, he asserts the body-worn cameras and the radio transmission from the April 23 carjacking were not provided to defendant prior to the suppression hearing in Union County. He states the issue of officers' not activating their body-worn cameras was not argued in Union County or discussed by the judge, and this is important given the rebuttable presumption under N.J.S.A. 40A:14-118.5(q)(2).

Finally, defendant argues the offensive use of collateral estoppel against a criminal defendant should not be permitted. He asserts the use of collateral estoppel in criminal cases stems from protecting defendants against double jeopardy. State v. Redinger, 64 N.J 41, 45-46 (1973).

25

An appellate court reviews a trial court's decision to invoke collateral estoppel de novo. Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000). That is because "[o]rdinarily the scope of the rule is confined to questions of fact or mixed questions of law and fact," and "its applicability also extends to questions of law." State v. Gonzalez, 75 N.J. 181, 187 (1977). When mixed issues of law and fact are present, as they are here, an appellate court gives deference to a trial court's factual findings, but reviews de novo the trial court's application of legal rules to the factual findings. See State v. Pierre, 223 N.J. 560, 576 (2015).

"[T]he term res judicata refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated." Tarus v. Borough of Pine Hill, 189 N.J. 497, 520 (2007) (quoting Valasquez v. Franz, 123 N.J. 498, 505 (1991)). "Collateral estoppel, in particular, represents the 'branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" Ibid. (emphasis in original) (quoting Sacharow v. Sacharow, 177 N.J. 62, 76 (2003)).

"The doctrine[] of collateral estoppel . . . serve[s] the important policy goals of 'finality and repose; prevention of needless litigation; avoidance of

duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness[.]'" First Union Nat'l Bank v. Penn Salem Marina, 190 N.J. 342, 352 (2007) (third alteration in original) (quoting Hackensack v. Winner, 82 N.J. 1, 32-33 (1980)). The party asserting collateral estoppel must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Ibid. (quoting Hennessey v. Winslow Twp., 183 N.J. 593, 599 (2005)).]

Collateral estoppel is "guided by the 'fundamental legal principle . . . that once an issue has been fully and fairly litigated, it ordinarily is not subject to relitigation between the same parties either in the same or in subsequent litigation.'" State v. K.P.S., 221 N.J. 266, 277 (2015) (omission in original) (emphasis omitted) (quoting Morris Cnty. Fair Hous. Council v. Booton Twp., 209 N.J. Super. 393, 444 n.16 (Law Div. 1985)). "'Traditionally, courts have confined application of the [collateral estoppel] doctrine to cases in which the parties were the same in both actions' because such an approach 'promoted

27

fairness and simplification.'"  Id. at 277-78 (alteration in original) (quoting

Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 337 (1996)).  "Simply put, for

collateral estoppel purposes, 'the question to be decided is whether a party has

had his day in court on an issue.'"  Id. at 278 (quoting McAndrew v. Mularchuk,

38 N.J. 156, 161 (1962)).  "In short, collateral estoppel will not apply if a party

did not have a 'full and fair opportunity to litigate the issue.'"  Ibid. (quoting

Zirger, 144 N.J. at 338).  However, it is inappropriate to invoke collateral

estoppel when "new evidence has become available that could likely lead to a

different result."  Barker v. Brinegar, 346 N.J. Super. 558, 567 (App. Div. 2002).

Here, in denying the State's motion for "[i]ssue preclusion," the Hudson

County court noted "all five factors necessary for collateral estoppel [were] not

present."  As to the first factor—the issue to be precluded is identical to the issue

decided in the prior proceeding—the court found:

> the issue in the [Hudson County] suppression motion
> [was] not identical to the issue decided by the [c]ourt in
> Union County because 1) the facts relied upon in [the
> Hudson County] motion may be different, 2) the scope
> of the evidence sought to be suppressed is different, and
> 3) the [c]ourt in Union County did not make findings
> about the failure to record or preserve certain body
> worn camera footage that was relevant to [d]efendant's
> apprehension. . . .  Defendant argues here that the
> alleged failure to record or preserve body worn camera
> footage would require the [c]ourt to consider an adverse
> inference against the State in favor of [d]efendant at the

28

suppression hearing. . . . Since the issue decided by the [c]ourt in Union County is not identical to the issue [in Hudson County], the State's request for collateral estoppel should not be granted.

As to the third factor, the court found "the motion decided in Union County [was] not a final judgment." The court relied on Rule 3:5-7(d), finding "a defendant is only entitled to appeal the denial of a suppression motion by right after a plea or conviction. . . . The denial of a motion to suppress is not a final judgment that may be appealed by right."

Additionally, the court found "due process and fundamental fairness support[ed] a finding that [d]efendant should not be estopped from" filing a suppression motion in Hudson County.

In conclusion, the court found:

> [T]he Hudson County and Union County cases are two separate prosecutions in two separate counties with two separate sets of charges involving two separate sets of overlapping discovery. The fact that some or maybe all of the State's witnesses may be in common and may need to be called as witnesses in both prosecutions is of no consequence. The State has elected to file charges in two separate counties for its own reasons; as such, the State must be prepared to move forward on each indictment in both counties.

We conclude the court did not err in denying the State's application based on collateral estoppel, as the State did not satisfy the factors articulated under

29

First Union National Bank. We need only address the third factor to reach that conclusion.

The trial court properly found the Union County suppression order was not a final judgment. Orders granting or denying motions to suppress are interlocutory. See State v. Reldan, 100 N.J. 187, 207 (1985). "Final judgments of a court, for appeal purposes, are judgments that finally resolve all issues as to all parties" subject to certain exceptions not applicable here. R. 2:2-3(b). Moreover, Rule 3:5-7(e) provides that if a motion to suppress is "granted, the property shall be delivered to the [defendant] . . . . Delivery of the property need not be made, however, until the expiration of the time within which the State may obtain leave to appeal pursuant to [Rule] 2:5-6." Rule 2:5-6 in turn addresses "[a]ppeals from [i]nterlocutory [o]rders, [d]ecisions and [a]ctions." Accordingly, the Union County order is not a final order for the purposes of collateral estoppel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1234-24